FRANCIS J. McELROY, Respondent, v. SWENSON CONSTRUCTION COMPANY, Appellant.

In the Kansas City Court of Appeals, January 8, 1923.

1. **NEGLIGENCE: Master and Servant: Negligence in Permitting Opening in Floor Through Which Angle-Iron Fell, Injuring Employee, Held a Question for Jury.** In an action for damages for personal injuries, where plaintiff, an employee of defendant, was ordered to work upon the second floor of a building under construction, while employees of another contractor were engaged in riveting steel girders on the ninth floor, was struck by a heavy piece of iron, known as an angle iron, which was jarred off a beam by vibrations caused by the riveting, so that it went through a panel upon the eighth floor, negligently left open by other contractor, striking boards, bouncing off and continuing uninterruptedly down to place where plaintiff was working, *held* it was unnecessary to show defendant could have foreseen everything that intervened to cause the angle-iron to fall in the way it did, and the question of defendant's negligence was sufficient to go to the jury.

2. ———: ———: Concurring Negligence: Proximate Cause: Master Held Liable for Injury to Servant as Result of Concurring Negligence of Another. The fact that the negligence of the servants of contractor in placing angle-iron upon the beam and then causing it to fall off, and the negligence of contractor in leaving the panel open through which it fell and injured plaintiff, were concurring causes of the injury, does not relieve defendant, contractor, of its negligence, if that negligence contributed as one of the proximate causes of the injury.

3. ———: ———: Assumption of Risk: Held Court Did Not Err in Refusing to Sustain Demurrer on Ground Plaintiff Assumed the Risk. Where plaintiff, an employee, engaged in working upon second floor of building knew steel riveters employed by another contractor, were working above him on the ninth floor, and the evidence showed he did not know there was any opening in the planking on the eighth floor through which an angle-iron was caused to fall injuring him, *held* court did not err in refusing to sustain demurrer on the ground plaintiff assumed the risk.

4. JUDGMENT: Res Adjudicata: Waiver: Estoppel: Settlement of Claim after Judgment and Pending Motion for New Trial with Joint Tort-feasor, Held Not to Constitute Res Adjudicata as to Claim Against Others. Where plaintiff recovered judgment against one of two defendants liable for injuries sustained by him, settled with such defendant while motion for new trial was pending, whereby he accepted less than amount of judgment, which it was stipulated should be set aside and case dismissed, and that plaintiff should have the right to proceed against the other defendant to recover additional money necessary to compensate him for his injury, *held* that although section 4223, Revised Statutes 1919, permits a settlement with and discharge of one joint tort-feasor releasing him from further liability without releasing the other, but the use of the words "claim or cause of action," therein, in referring to what might be settled, excludes a judgment, and thereby the first action in which plaintiff recovered judgment was not *res adjudicata* as to his rights against the other defendant, and he did not thereby waive his claim, nor was he estopped to pursue it, as he was particular not to settle the judgment, but only the claim or cause of action against first defendant.

5. ELECTION OF REMEDIES: Actions: Joint and Several: Joint Tort-feasors: Continuing Action After Settlement of Claim with One Joint Tort-feasor Does Not Constitute an Election of Remedies. Where plaintiff sued one joint tort-feasor after dismissal of action and settlement of claim as to another, *held* that there was no

question of election of remedies arising therefrom, as plaintiff had a right to pursue the wrongdoers either jointly or severally.

6. **PLEADING:** Evidence: Evidence as to Curvature of Spine to be Admissible Must be Pleaded. Where no injury or condition of the spine was alleged in petition, evidence as to curvature of spine resulting from injury was inadmissible because not pleaded.

7. **INSTRUCTION:** Damages: Instruction Authorizing Jury to Take into Consideration Plaintiff's Loss of Earnings, Held Erroneous Because There Was no Evidence as to the Extent Thereof. An instruction which told jury that it might take into consideration the earnings that plaintiff had lost and those he would be reasonably certain to lose in the future, was erroneous, as there was no evidence showing what plaintiff would lose in the future in the way of earnings, nor any evidence as to what he was earning at the time of the trial, although he was employed.

8. **TRIAL PRACTICE:** Improper Argument: Argument That Part of Any Damages Awarded Plaintiff Would go to Attorneys in Payment of Their Fees, Held Improper. Argument of plaintiff's counsel to jury that a part of the $7000 that plaintiff had already received in compensation for his injuries, went to attorneys to pay their fees, and to intimate to jury that a part of any sum that they might award in present action would go to attorneys for same purpose, *held* improper.

Appeal from the Circuit Court of Jackson County.—
*Hon. Samuel A. Dew*, Judge.

REVERSED AND REMANDED.

*Clif Langsdale* for respondent.

*Cooper, Neel & Wright* for appellant.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $6,000 and defendant has appealed. Defendant urges that its instruction in the nature of a demurrer to the evidence should have been given.

The facts stated in their most favorable light to plaintiff show that on or about the 4th day of October, 1918, and for sometime prior thereto, plaintiff was work-

ing for the defendant wrapping wire around steel columns for reinforcing concrete to be poured later, when a heavy piece of iron known as an angle-iron fell seven stories from above striking him on his left shoulder breaking his collar bone in several places. The Bell telephone company was erecting a building at 11th and Oak Streets in Kansas City, Missouri. The building covered an area of 150 by 200 feet. The steel frame work had been set in place to the eleventh floor. Christopher and Simpson Iron Works Company had the steel contract and the employees of said company on the day in question were engaged in riveting the steel girders on the 9th floor of the building. The entire 10th floor at the time of plaintiff's injury was planked over and on this planking rested a derrick which was being used for raising steel to be set above the 10th floor and to bring up other materials. There was no planking on the 9th floor except such as was necessary to afford scaffolding for the riveters. The 8th floor was entirely planked over except for a space of about twenty-five feet square known as a panel. There was no planking on the 7th floor. The 6th floor had been planked over but this planking had been removed to the 10th floor except for the space immediately below the panel on the 8th floor.

The rivets being used weighed from two ounces to one and a-half pounds. They were heated on the 8th floor and thrown to the 9th floor where the riveters would use them to bolt together the beams and girders. The riveting was completed by the battering down by a riveting machine of the end of a rivet opposite its head. Before riveting the riveters would take off the angle-iron that fastened the beam and the column of the steel that had been put in place and put it on a near-by beam. At the time in question one of these angle-irons, weighing twenty or thirty pounds, was taken off and placed upon a beam and the process of riveting started. The vibration of the riveting machine jarred the angle-iron off the beam. On its way down the angle-iron struck

a cable, went through the panel on the 8th floor, struck the boards immediately below on the 6th floor, bounced off, continued uninterruptedly down to the second floor where plaintiff was working and struck him as above described.

There was an ordinance pleaded providing that the contractor for the steel work and the owner of the building should "thoroughly plank over the entire tier of iron or steel beams on which the structure of iron or steel work is being erected except such spaces as may be reasonably required for the proper construction of such iron and steel work and for the raising or lowering of materials to be used in the construction of such buildings or such spaces as may be designated by the plans and specifications for stairways and elevator shafts."

The testimony shows that these panels in the floors were left open for the purpose of hoisting various materials and tools from a lower floor to a higher one and while there is testimony in the record that the open panel on the 8th floor was left open for the purpose of taking up the board and materials thereon, consisting largely of tools, to the 6th floor, the evidence further shows that instead of taking up the board and material that was left, Christopher and Simpson, on account of steel being delivered on the ground, "went overboard" and started with the derrick to raise steel to be put in place above the 10th floor. So the panel remained open about a week which caused complaint to be made by the employees of Christopher and Simpson Iron Works Company. Plaintiff had been working on the job about a month. He started with the basement and had got as far as the second floor where he was doing the wrapping. He knew that the riveters were working above him; he could see them working when he went to work. He testified that he did not know that there were any holes in the planking above him; that he looked up and saw no daylight. He testified that his foreman told him to do the particular work at the particular place where he was

doing it at the time he was hurt. There was no connection between defendant and the Christopher and Simpson Iron Works Company.

The cause of action stated in the petition which was submitted to the jury, alleges that the defendant carelessly and negligently ordered and directed plaintiff to work on the second floor of the building while the panel above was open on the 8th floor and the steel riveting gang was working on the 9th floor; that the defendant knew, or could have known by the exercise of ordinary care, ''that a piece of iron might and would fall from'' the 9th floor through said open panel and strike plaintiff.

Defendant insists that its demurrer to the evidence should have been sustained for the reason that there was no negligence of the defendant shown; that the ordinance permitted the panel to be left open for the raising and lowering of materials used in the construction of the building; that there was no obligation on the part of defendant to put any planks or flooring in place in the building; that the angle-iron was not caused to fall by any person connected with the defendant; that there is no evidence that defendant had any knowledge with reference to the handling of this angle-iron or the condition of the flooring; that there is no evidence tending to show that defendant could have anticipated that the servants of Christopher and Simpson would let this angle-iron fall so it would strike a cable and be deflected and go down through an opening in the 8th floor and bounce off. and go down through the other floors and finally strike plaintiff who happened to be at the particular place the iron struck when the building was 150 x 200 feet in area.

We think there is no merit in these contentions. We think there is no question but that the panel was negligently left open by Christopher and Simpson and that by the exercise of ordinary care defendant could have discovered the situation before it ordered plaintiff to work at the place where he was struck. The presence

of this opening with men working with rivets, angle-irons and other materials above and throwing heated rivets to each other, and the fact that the riveting gang was placing angle-irons upon beams and that they would likely fall off by reason of the vibration that was caused by the riveting, all could have been known to defendant by the exercise of ordinary care. It was not necessary to show that defendant could have foreseen everything that intervened to cause the angle-iron to fall in the way it did. All that was necessary to show was that defendant could have reasonably anticipated that something might have occurred causing material to fall through the open panel in such a way that it would likely strike its workmen beneath. [Mummaw v. S. W. Tel. & Tel. Co., 208 S. W. 476; Wright v. K. C. Terminal Ry. Co., 195 Mo. App. 480.]

The board and the material thereon that had been left on the 6th floor below the open panel were not raised through the opening as was intended but were left there and the servants of Christopher and Simpson went to work on something else and although protest was made Christopher and Simpson negligently left the panel open. While there was no duty upon the defendant under the ordinance to plank over the floor and the allegation of negligence in the petition that was submitted to the jury does not so charge, yet defendant could have discovered by reasonable care that Christopher and Simpson were violating the ordinance and that the leaving open of the panel rendered plaintiff's working place not reasonably safe. [Clark v. Union Iron & Foundry Co., 234 Mo. 436; Hayes v. Sheffield Ice Co., 282 Mo. 446.] The fact that the negligence of the servants of Christopher and Simpson in placing the angle-bar upon the beam and then doing things causing it to fall off, and the negligence of Christopher and Simpson in leaving the panel open were proximate concurring causes of injury, does not relieve defendant of its negligence if that negligence contributed as one of the proximate causes of

the injury, which we think it did. [Grubb v. Dunham, 201 Mo. App. 504.]

It is insisted that the demurrer should have been sustained because plaintiff assumed the risk. We think there is no merit in this contention. [Hayes v. Sheffield Ice Co., supra, l. c. 454, 455.]

It is insisted that the court should have sustained the demurrer to the evidence because of the following facts: Plaintiff prior to the filing of this suit brought a suit against this defendant and the Christopher and Simpson Iron Works Company, alleging that it was the duty of both defendants to furnish plaintiff a safe place in which to work and that both defendants had violated the ordinance concerning the planking of floors. At the conclusion of the testimony the court indicated that it would sustain a demurrer to the evidence as to the defendant Swenson Construction Company, and the plaintiff dismissed as to this company and proceeded to judgment against the Christopher and Simpson Iron Works Company, resulting in a verdict for $15,000, whereupon Christopher and Simpson Company filed a motion for a new trial. The court indicated that the verdict in his opinion was excessive and that the motion for a new trial would be sustained unless plaintiff would agree to a remittitur. Shortly afterwards plaintiff and defendant in that case entered into an agreement in which it was stipulated that the judgment should be set aside and the case dismissed, whereupon that defendant would pay plaintiff the sum of $7,000 in settlement of plaintiff's claim against it, and that plaintiff should have the right to proceed against the Swenson Construction Company to recover the additional money necessary to compensate him for his injury. The terms of this agreement were carried out. The petition in the present case asked judgment for the same injuries that were prayed for in the petition in the other case.

It is insisted now by the defendant in the case at bar that although section 4223, Revised Statutes 1919,

permits a settlement with and a discharge of one joint tort-feasor releasing him for further liability without releasing the other, yet said section because it uses the words "claim or cause of action," in referring to what might be settled, excludes a judgment, and that under the facts in the case at bar the judgment in the other case was settled and the matter is now *res adjudicata* and plaintiff has waived any claim that he had against the present defendant and is estopped from undertaking to pursue it; that the method used by plaintiff in settling the judgment was a constructive and legal fraud upon the court and the present defendant. We see no merit in this contention. The evidence shows that plaintiff was particular not to settle the judgment but only the claim or cause of action as to the Christopher and Simpson Iron Works Company. He had a perfect right to settle such cause of action as to said company without consulting the defendant, the other joint tort-feasor, and the Swenson Construction Company has no right to raise any question in this suit in relation thereto except as to whether or not the settlement was for plaintiff's entire cause of action. [Abbott v. City of Senath, 243 S. W. 641.] In the former case the trial had intimated that it was going to sustain the motion for a new trial unless plaintiff remitted a part of the verdict. Therefore plaintiff had no judgment that he had any assurance would remain final. The motion for a new trial had not been passed upon. The facts show that it was not plaintiff's intention to settle the judgment itself but to take less than he thought he was entitled to in settlement of his claim against the Christopher and Simpson Company and to proceed to collect the balance from this defendant. Of course, there is no question of election in the case arising from the fact that plaintiff continued the suit against the Christopher and Simpson Company after dismissing as to the Swenson Construction Company. He had a right to pursue the wrongdoers either jointly or severally. [Miller v. Prough, 221 S. W. 159.] None of the requisites of *res adjudicata* are present.

Complaint is made that the court erred in admitting evidence as to curvature of plaintiff's spine. The petition alleges that plaintiff's "left shoulder and arm were bruised, contused, lacerated, wrenched, sprained, twisted and the bones thereof dislocated, fractured and broken; his left shoulder blade was fractured and broken; his left collar bone was fractured, broken and dislocated, and the use and function of said arm and shoulder is impaired; he received a nervous shock; suffered pain of body and mind; that by reason of the injuries to his left collar bone and shoulder blade and the joints, bones, muscles and ligaments of his left arm and left shoulder and left collar bone, the use of his right arm and right shoulder have become impaired and plaintiff suffers pain in the use of said right arm and right shoulder. Plaintiff states that by reason of the dislocation of his left shoulder and by reason of the fracture of his left shoulder blade the head of the humerus of his left arm has become displaced forward. Plaintiff states that by reason of said injuries the muscles and muscle fibers and ligaments, nerves and nerve fibers of his left arm and left shoulder and of his right shoulder have become wasted, weakened, and the functions thereof impaired."

It is insisted that no injury to or condition of the spine is alleged in the petition. We think this point to be well taken. Plaintiff's physician was asked by plaintiff what he discovered to be the matter with plaintiff at the time of his examination of him, thereupon the physician gave a long list of injuries and concluded by stating that "In observing the back, you notice he has a slight curvature of the spine." Defendant moved to strike this testimony out for the reason that no allegation of an injury to the spine or of curvature of the spine was made in the petition. The court first struck out the testimony but thereupon permitted plaintiff to introduce evidence tending to show substantially the same thing.

Counsel for plaintiff asked the physician as follows:

"Q. Doctor, what connection, if any, did this curvature of the spine have with the muscles and ligaments of the left shoulder, or any of the nerves, ligaments, or arm muscles of the left shoulder. . . .

"Q. Are there muscles and ligaments connected with the left shoulder blade? A. Yes, sir.

"Q. And, where do those muscles run, Doctor, to the back? A. There are a large number of muscles which are attached to the shoulder blade. Many of them have their origin at different points along the spine, from the back of the head, down to the middle of the back . . .; others have their origin from the ribs.

. . .

"Q. Doctor, did you observe any of these muscles and ligaments you have described, as radiating from the left shoulder, as to their condition? A. They are wasted, as compared with the muscles on the opposite side.

"Q. What effect, if any, would that wasted condition of these muscles have on their function? A. It would impair the function.

"Q. And, what is the function of the muscles there, running from the shoulder blade to the spine? A. They support the shoulder, when strong movements are made with the arm, by bracing it against the back; they support the back, when one is holding by the arm, and using the opposite side of the body.

"Q. What effect, if any, Doctor, would it have upon the position of the spine, by weakening the muscles? . . . (Objection here.) A. The tendency is for the spine not to be as well balanced as it would be otherwise, and therefore, tend to deviate to one side."

At the close of this testimony counsel for defendant again asked that the testimony about deviation of the spine be stricken out. This was overruled.

The rule is that only such injuries can be shown as are the natural and necessary result of the injuries complained of in the petition, and that if plaintiff purposes to rely upon conditions and diseases growing out of alleged bodily injuries, then specific pleading thereof is

required. [Shafer v. Harvey and Dunham, Receivers, 192 Mo. App. 502; Hall v. Coal & Coke Co., 260 Mo. 351.] One reading the allegations of this petition in reference to the injuries would not be informed that deviation or curvature of the spine would be claimed.

As the case must be retried it is not improper for us to say that we have examined defendant's objections to plaintiff's given instructions and its complaint as to the refusal of defendant's instructions, and we find no merit in them except as to the instruction on the measure of damages. In that instruction the jury was told that it might take into consideration the earnings that plaintiff had lost and those that he would be reasonably certain to lose in the future. Plaintiff's earnings at the time of his injuries were shown. However, there was no evidence showing what plaintiff would lose in the future in the way of earnings as there is nothing to show what he was earning at the time of the trial although he was employed. It it not necessary for us to pass upon the complaint made to the argument of plaintiff's counsel to the jury, except to say that it was improper for counsel to state and reiterate to the jury that a part of the $7,000 that plaintiff had already received in compensation for his injuries went to attorneys to pay their fees and to intimate to the jury that a part of any sum that they might award in this trial would have to go to attorneys for the same purpose. Such an argument should be avoided at another trial.

The judgment is reversed and the cause remanded. All concur.