WILLIAM MURPHY, Respondent, v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Appellant, No. 42253—244 S. W. (2d) 31.

Division Two, December 10, 1951.

*Coburn, Storckman & Croft, Clem F. Storckman* and *Winston Cook* for appellant.

774

*Paul H. Koenig* and *William L. Mason, Jr.,* for respondent.

 BOHLING, C.—The St. Louis Public Service Company, a corporation, appeals from a judgment for $15,000 (reduced by remittitur from $22,000) in favor of William Murphy for injuries sustained when one of defendant's streetcars collided with his automobile. Defendant challenges the correctness of two of plaintiff's instructions and contends the damages are excessive.

The sole charge in plaintiff's petition was that defendant was negligent under the humanitarian doctrine. Plaintiff's verdict directing instruction predicated recovery under said doctrine only on defendant's negligence in failing to stop.

Plaintiff, who was in his forties, was proceeding in his automobile west along Olive street, an east-west public street in the city of St. Louis, Missouri, having east- and westbound streetcar tracks, at about 1:15 a.m., December 10, 1947. It was snowing and the streets were slippery. As plaintiff neared the Spring avenue intersection a parked automobile pulled out from the curb without any warning and plaintiff applied his brakes to avoid a collision; and his automobile, skidding about 20 feet, went onto the eastbound streetcar tracks on the south side of Olive street, where his motor stalled. Plaintiff then observed an approaching eastbound streetcar and he kept pushing on the starter, attempting to start his motor again. He estimated he was in this position trying to start his motor for 10 to 15 seconds before the streetcar struck his automobile.

Plaintiff also adduced testimony that no warning was given of the streetcar's approach; and that the motorman was talking to a

young lady sitting directly behind him and in doing so was glancing back over his shoulder, but the witness did not know where the motorman was looking at the time of the accident.

The testimony warranted findings that the streetcar was from 150 to over 350 feet from plaintiff's automobile when it stalled upon the eastbound track. Plaintiff's witnesses estimated the speed of the streetcar at 30 miles an hour; that its speed had not slackened at the time of impact; that it moved approximately 20 feet after the impact before stopping; and that the streetcar could be stopped in 115 feet when traveling 25 miles an hour and in 125 feet when traveling 30 miles an hour.

Defendant's version differs. The motorman first observed plaintiff's automobile when it was about 300 feet away, proceeding west on the eastbound track, fast and straight towards the streetcar. He applied all the brakes he had when they were about 150 feet apart and had slackened the speed of the streetcar from 25 to about 1 mile an hour at the instant of the impact, the streetcar moving about 2 feet after the impact. There was no change in the speed of the automobile up to the time of collision and the two vehicles collided practically head-on. There was some corroborating testimony.

■ Defendant says plaintiff's instruction No. 6 contains abstract propositions of law which are incomplete; that it injected antecedent primary negligence into a humanitarian submission, and is confusing, misleading and erroneous in a case submitted solely under the humanitarian doctrine. We quote the instruction:

"The Court instructs the jury that if you find and believe from the evidence that Olive Street, at the point shown to you in the evidence, was an open, public street in and of the City of St. Louis and State ■ of Missouri, then you are instructed that the defendant was not entitled to the exclusive use of that portion of the said public street which lay between the rails of its tracks located thereon, and that it was the duty of the motorman of the streetcar described in the evidence to exercise ordinary care in the operation thereof, and to be on the watch for automobiles on defendant's eastbound track."

The instruction does not direct a verdict. Plaintiff states that it was collateral to his main instruction; that it was not strictly necessary and it is doubtful if its refusal would have been error, and contends it did not constitute reversible error. Mo. R. S. 1949, § 512.160(2).

Plaintiff's main instruction informed the jury that even though plaintiff be guilty of contributory negligence, still the verdict should be for plaintiff if, after plaintiff was in a position of imminent peril, defendant's motorman "saw, or in the exercise of ordinary care could have seen" plaintiff in said position in time thereafter, and

by the exercise of ordinary care, to have stopped the streetcar and avoided the collision, and the motorman negligently failed so to do, et cetera. Plaintiff's instruction No. 7 informed the jury that negligence "means a failure, if any, to exercise ordinary care * * *."

Instruction No. 6 has three parts, to wit: (1st) that defendant was not entitled to the exclusive use of the street between the rails of its tracks; (2nd) that it was the duty of defendant's motorman to exercise ordinary care in the operation of the streetcar, and (3rd) to be on the watch for automobiles on defendant's eastbound track.

An instruction that a defendant street railway "possessed no rights superior to those" of the driver of a vehicle at a street intersection was expressly held reversible error in a case submitted solely under the humanitarian doctrine in Grout v. Central El. Ry. Co., 151 Mo. App. 330, 333, 131 S. W. 891, 892. In Bruening v. Metropolitan St. Ry. Co., 180 Mo. App. 434, 441, 168 S. W. 248 250[5], the plaintiff predicated a recovery under primary and humanitarian negligence, and the distinction between like instructions not being erroneous in such instances and erroneous in cases submitted solely under the humanitarian doctrine is there developed in the consideration of the Grout case, supra. Such instructions are recognized as germane to the charge of a defendant's primary negligence and the defense of a plaintiff's contributory negligence; but are not germane when the humanitarian doctrine begins to operate, because defendant's duty to act exists whether plaintiff had any right at the place or not, plaintiff's contributory negligence being no defense. The Grout case reasoned the purpose and obvious effect of the instruction was to give the jury the idea that it was an open question whether or not the peril of plaintiff was caused by the assertion of a superior right to the use of the street by defendant, and hence the instruction injected a false issue into the case, was misleading and reversible error.

While like instructions have been held permissible in primary negligence cases, plaintiffs are not entitled to such instructions as a matter of right. See the discussion on instruction D in Schipper v. Brashear Truck Lines, Inc., Mo., 132 S. W. 2d 993, 995[3, 4] which states: "Such instructions merely tend to confuse and mislead the jury. No one can know how a jury would apply said abstract propositions of law to the case at hand."

▮ Defendant's main complaint is that the instruction injected antecedent negligence into a case submitted solely under defendant's duty to stop under the humanitarian doctrine. If so, the instruction is prejudicially erroneous. Mayfield v. Kansas City So. Ry. Co., 337 Mo. 79, 85 S. W. 2d 116, 123[6], citing cases; and Reiling v. Russell, 348 Mo. 279, 153 S. W. 2d 6, 8[1-3], among other cases.

Reiling v. Russell, supra, involved injuries to a pedestrian when struck by defendant's automobile. Plaintiff submitted his case

solely on defendant's duty to slacken the speed of, to swerve, to stop, and to warn of the approach of the automobile under the humanitarian doctrine. The introductory paragraph of said instruction informed the jury that "it is the duty of persons operating automobiles on any public highway in this state to exercise the highest degree of care, by which is meant that degree of care which a very careful and prudent person would use under the same or similar circumstances, and the failure to exercise the highest degree of care would constitute negligence." In holding said paragraph prejudicially erroneous the court pointed out that it defined the duty, generally, applicable to any ground of negligence of motorists and might lead the jury to return a verdict against defendant if they found defendant guilty of either primary or humanitarian negligence; that it did not limit the jury to a consideration of the conduct of defendant after plaintiff was in a position of imminent peril but permitted the jury to consider any conduct of defendant either after or before plaintiff's imminent peril arose, and that the jury may have believed that they should return a verdict against defendant because of excessive speed or some other act of negligence occurring before plaintiff's perilous situation arose, embracing evidence in the case warranting a finding that defendant's automobile was being operated at an excessive speed, which would constitute primary negligence. This holding was followed and applied to a like instruction in Wright v. Hummel, Mo. App., 164 S. W. 2d 640, 643[1, 2].

With respect to requiring the motorman "to be on the watch for automobiles on defendant's eastbound track," an instruction requiring a motorman "to keep look out" was held erroneous in Whitley v. Kansas City Pub. Serv. Co., Mo. App., 66 S. W. 2d 952, 954[5], because it was so indefinite as to time as to submit "both primary negligence and the doctrine of humanitarian negligence * * *. Freeman v. Berberich, 332 Mo. 831, 60 S. W. 2d 393."

This issue is developed in Mayfield v. Kansas City So. Ry. Co., 337 Mo. 79, 85 S. W. 2d 116, 123[6-17, 20] (references are to 85 S. W. 2d), wherein it is stated that the violation of a duty to keep a lookout "would create a cause of action for primary and not humanitarian negligence" (l. c. 124[20]). The court said (l. c. 123[7, 8]): "A charge that failure to keep a lookout is the proximate cause of an injury, whether the duty to look arises either because of the place or because of the circumstances, is a charge of primary negligence, but it is not humanitarian negligence. * * * In other words, in spite of a failure to keep a lookout, the humanitarian doctrine may come into operation, not because that is in itself humanitarian negligence, but because we have, *at places where there is a duty to keep a lookout*, extended the humanitarian rule to discoverable as well as discovered peril." Under the discoverable peril theory a defendant is charged with seeing what he could have seen whether he looked or

negligently failed to look. The law makes it so and "* * * there is no question about it. * * * If there was a duty to keep a lookout, the question is could he have been seen in time if it had been kept, and not was a lookout kept" (l. c. 124[15, 16]). And see l. c. 125. Consult State ex rel. v. Shain, 344 Mo. 404, 126 S. W. 2d 1193, 1196; Millhouser v. Kansas City Pub. Serv. Co., 331 Mo. 933, 55 S. W. 2d 673, 675[4]

Of the cases stressed by plaintiff: Bumgardner v. St. Louis Pub. Serv. Co., 340 Mo. 521, 527[3], 102 S. W. 2d 594, 598[6]; Hoelzel v. Chicago, R. I. & P. Ry. Co., 337 Mo. 61, 71[5], 85 S. W. 2d 126, 130 [8, 9]; Martin v. United Rys. Co., 186 Mo. App. 576, 582, 172 S. W. 406, 407[2, 3].

The Martin case predicated a recovery under the Vigilant Watch ordinance of the city of St. Louis, plaintiff securing an instruction to like effect as the instant instruction. In so far as here involved, the St. Louis Court of Appeals stated that said ordinance was merely declaratory of the humanitarian doctrine. The statement is erroneous as a violation of said ordinance is primary negligence and a plaintiff's contributory negligence will defeat a recovery. Gubernick v. United Rys. Co., Mo., 217 S. W. 33, 35. See State ex rel. Vogt v. Reynolds, 295 Mo. 375, 387, 244 S. W. 929, 932. The propriety of the instruction in a primary negligence submission is not involved here.

The Bumgardner and the Hoelzel cases involved submissions under primary and also humanitarian negligence and are distinguishable for that reason as pointed out in Bruening v. Metropolitan Street Railway Co., 180 Mo. App. 434, 441, 168 S. W. 248, 250[5]. In addition, reference to the Bumgardner case discloses that the issues here presented were not there presented or ruled. It is not authority here. The Hoelzel case may be distinguished on other grounds. The instruction there required defendant to exercise ordinary care "to look out for and to discover the presence and near approach of persons * * * on or near or about to go upon" the tracks, characterizing a failure so to do as negligence. This was treated as being limited to after plaintiff's imminent peril arose. (Wright v. Hummel, Mo. App., 164 S. W. 2d 640, 644.) The instant instruction is not so limited. The Hoelzel case relied upon Hults v. Miller, Mo. App., 299 S. W. 85, 89[8, 9], involving primary and humanitarian submissions, which in turn relied on Parrish v. United Rys. Co., Mo., 260 S. W. 748, 750[3], submitting primary negligence only. The Hoelzel case is out of harmony with recent holdings that the humanitarian doctrine is not applicable while a plaintiff is merely approaching a position of imminent peril. Buehler v. Festus Merc. Co., 343 Mo. 139, 119 S. W. 2d 961, 970[11, 12]; Hilton v. Terminal Rd. Ass'n of St. L., 345 Mo. 987, 137 S. W. 2d 520, 522[4].

Plaintiff's instruction No. 6 was not a definitive instruction. Considering it as a whole and in the light of the facts in the instant record, it constituted reversible error under the Grout, Reiling, Wright, Mayfield and Whitley cases, supra. It informed the jury it was the duty of the motorman to exercise ordinary care in the operation of the streetcar and to be on the watch for automobiles on the eastbound track, and is not restricted to the time after plaintiff's imminent peril arose. Under it the jury was authorized to consider evidence adduced on behalf of plaintiff tending to establish antecedent negligence of excessive speed, of failure to warn, and of the motorman in looking back over his shoulder talking to the young lady instead of watching the track in front of him. Plaintiff's contributory negligence was a defense to defendant's primary negligence but not to defendant's humanitarian negligence. It was confusing, misleading, and prejudicial to inject defendant's antecedent negligence into plaintiff's humanitarian submission of a failure to stop.

Defendant questions plaintiff's measure of damage instruction, stating there was no substantial evidence to sustain an allowance for "impairment of earning capacity," and that an allowance for permanent injuries in addition thereto caused the submitted elements of damage to overlap and permit of double damages. Defendant also claims the $15,000 damages are excessive.

The instruction authorized the jury to award plaintiff such damages as would fairly and reasonably compensate him for the injuries directly resulting from the collision; and in arriving at the amount of plaintiff's damages, stated: "* * * you may take into consideration and account:

"1. Such pain and suffering of body and mind * * * as * * * plaintiff has suffered * * *,"; and "2. * * * will * * * in the future suffer * * *;

"3. Such impairment of earning capacity, if any, as you may find and believe from the evidence plaintiff has sustained as the direct result of" his injuries;

"4. Such distinct, permanent injuries, if any, as you may find and believe from the evidence plaintiff will suffer as the direct result of" his injuries.

Plaintiff's petition alleged as elements of damages, among others, permanent injuries, loss of wages of approximately $50.00 a week, and permanent impairment of his earning capacity in the future.

There was testimony that plaintiff worked at times prior to and after his injury ▆▆ but there was no showing as to what he received therefor. This was not substantial evidence sustaining the allegation of a loss of time and wages of approximately $50 a week. Woods v. Kansas City L. & P. Co., Mo. App., 212 S. W. 899, 903[9]; Brooks v. McCray, Mo. App., 145 S. W. 2d 985, 990[5, 8]; Chilcutt v. Le Clair,

Mo. App., 119 S. W. 2d 1, 5[3-6]; McElroy v. Swenson Const. Co., 213 Mo. App. 160, 247 S. W. 209, 212[7].

Plaintiff relies upon Wolfe v. Kansas City, 334 Mo. 796, 68 S. W. 2d 821, 822[1-3], a case instituted by a married woman, whose duties consisted of housekeeping. No issue of excessive damages was presented (68 S. W. 2d 822[1]). Her measure of damage instruction included an allowance for "the impairment, if any, of her power to earn money." The court distinguished between "loss of time and earnings or wages" and "impairment of earning capacity," stating the distinction was not always made, viewed "the loss of the power to earn money or earning capacity" as loss of the present power to earn a living or earn money, inherent in every individual, although never exercised (68 S. W. 2d 823[2]), and held Mrs. Wolfe might recover for said element of damages without showing a pecuniary standard for its admeasurement (68 S. W. 2d 821[1]). Lanasa v. Downey, Mo. App., 201 S. W. 2d 179, 184[7, 8, 11, 12], involving injuries to a minor, followed the Wolfe case.

However, the Wolfe case also stated (68 S. W. 2d 825): "Present impairment of earning capacity is included in the compensation for the injuries themselves and the submission of a recovery for such injuries plus such impairment is clearly a submission of double compensation. [Citing cases]."

Davidson v. St. Louis Transit Co. (Banc), 211 Mo. 320, 344(I), 109 S. W. 583, 589(1), where plaintiff was a widow at the time of trial, held an instruction reversible error which allowed recovery, among other items, for "probable impairment of earning capacity in the future" in the absence of any proof of earning capacity, it being susceptible of reasonable proof and the case not falling within the line of cases where earning capacity was not susceptible of proof. While the language is as indicated, the court apparently treated the issue as involving loss of time and earnings as stated in the Wolfe case (68 S. W. 2d 1. c. 825).

We think the instruction subject to criticism. The instant plaintiff was an adult man and under the record his earning capacity was susceptible of reasonably accurate proof whether the element of damages be viewed as a loss of time or as an impairment of earning capacity. Cases involving married women or minors who have no established record of earnings differ. The Davidson case, supra. Under the Wolfe case, supra, it appears that the instruction submitted double compensation in that it allowed awards for impairment of earning capacity and for permanent injuries as separate elements of damage. We cannot say the jury did not follow the instruction. The trial court considered the verdict excessive and a remittitur of $7,000 was entered under its order.

We need not discuss the issue of the amount of damages.

781

The judgment is reversed and the cause is remanded. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.