Harry R. SPARLING, (Plaintiff) Respondent,

v.

Walter A. HOARD, (Defendant) Appellant.

No. 31443.

St. Louis Court of Appeals.

Missouri.

July 21, 1964.

Gray & Jeans, Charles E. Gray, St. Louis, for appellant.

George W. Cady, St. Louis, for respondent.

L. F. COTTEY, Special Judge.

Plaintiff recovered judgment in the court below for $6,250 for damages allegedly sustained by him in an automobile collision. Defendant appeals. No point is made as to the sufficiency of the evidence to sustain the verdict insofar as the question of liability is concerned, for which reason it is unnecessary to notice the details of the accident. Defendant does insist, however, that the verdict is excessive and that its excessiveness results from the commission of three errors in the course of the trial: first, in permitting plaintiff to inject the question of insurance in the case; second, in authorizing the jury to consider plaintiff's medical expenses as items of damage, without direct proof of their reasonableness; and third, in submitting plaintiff's alleged loss of earnings as an element of damages when there was no substantial evidence thereof. Of these, in their order:

*First:* In the course of plaintiff's cross-examination Mr. Gray, defendant's attorney, inquired: "When was the last time you were examined by a doctor?" Plaintiff replied, "I believe the last time was by the doctor the insurance company has." The answer triggered a galvanic response from plaintiff's counsel which he says was "a reflex action." He exclaimed, "Mr. Gray sent you to?" "Yes," replied his client, "Mr. Gray sent me to." And in a final involuntary gasp counsel added, "Mr. Gray sent you to."

It is urged on this appeal that counsel's interjections were not as irresistibly impulsive as he would have us believe; that in fact they were deliberately made for the purpose of pointing up the interest of an insurance company in the defense of the case; hence, that defendant's motion for a mistrial should have been sustained. Unfortunately, that point is not before us for review. The record discloses that at no time did defendant object to counsel's remarks. The motion for mistrial—the only remedial action requested—was in this language: "Your Honor, I move that a mistrial be declared; that was not responsive to the question." Nor does defendant's motion for new trial make any reference to counsel's comments. It specifies only that plaintiff testified that he was examined by an insurance company doctor and "(t)his answer was neither responsive nor called for by the question asked plaintiff." If defendant thought that the remarks of counsel were prejudicial, or that the effect of the witness's answer, as aggravated by counsel's interjections, was more serious than mere unresponsiveness would imply, it was his duty to be explicit in stating his grounds to the court. "If counsel are guilty of matters of misconduct during a trial, such matters must be timely called to the court's attention by opposing counsel and the trial court must be given opportunity to grant relief by requests for instant ruling and action by the court." Blanford v. St. Louis Public Service Co., Mo., 266 S.W.2d 718, 721. We cannot convict the trial court of error on a point never called to its attention. Of course, the answer itself was improper, but the mere fact that it was unresponsive—the only objection made to it—does not warrant a reversal. No doubt, it would have been stricken and the jury instructed to disregard it had that relief been requested; but even that was not done. There are cases, to be sure, in which the effect of the improper answer has been so patently prejudicial that no remedial action could suffice to remove it; but they will be found to be cases in which the fact of defendant's insurance coverage was directly and specifically developed, as in Boyne v. Schulte, Mo.App., 222 S.W.2d 503, or where there was a "persistent and insistent determination" to put that fact before the jury, as in Olian v. Olian, 332 Mo. 689, 59 S.W.2d 673, or where, at all events, the incident to which specific objection was made was of such a character as to exclude any inference of inadvertence which might otherwise extenuate it. We think the answer of the witness in this case, standing alone as it must for the purposes of this review, was not of that character, and on the record made there was no such abuse of the court's discretion as to warrant a reversal. Moss v. Nehman, Mo.App., 247 S.W.2d 305.

*Second:* Plaintiff was hospitalized for five days following the accident, suffering from concussion, temporary amnesia, a contusion of the cervical area, a contusion of the low back, and numerous cuts and bruises, for all of which he received treatment while there. X-rays revealed no fractures or dislocations. The total hospital bill was $135 to $138, "something like that." Upon the recommendation of his attending physician plaintiff bought and wore a Thomas collar for relief of the muscle spasm in his neck. It cost "about $10.00." Following his discharge from the hospital he revisited his attending physician five or six times over a period of ten months for additional attention to his neck injury, and, during the same time, or perhaps during an overlapping period, he took a series of treatments for his neck injury from a Dr. Schatzman. The attending physician's bill for those treatments was "approximately $100.00" and he testified that the charge was reasonable; Dr. Schatzman's bill "might have been close to a hundred," but there was no testimony as to the reasonableness of the charge. In addition, plaintiff spent "possibly" as much as $25.00 to $50.00 for drugs for the relief of pain. There was no direct evidence as to the reasonableness of any of those charges, except the bill of the attending physician for

treatments after plaintiff's discharge from the hospital. It seems to be at least tacitly conceded, however, that the expenditures were necessary. On the face of it the charges appear to have been modest; certainly there is no indication that either plaintiff or defendant has objected to them as being excessive. The trial court instructed the jury to consider plaintiff's reasonable and necessary medical expenses on the issue of damages. Defendant contends that there was a failure of proof as to the reasonableness of the charges; hence, that the submission was erroneous.

■ We are familiar with the rule that where medical expenses are to be submitted to the jury, "they must be supported by substantial evidence as to * * * the reasonableness of the charge," and "(t)he mere mailing of a statement * * * does not supply the substantial evidence required." Spica v. McDonald, Mo., 334 S.W.2d 365, 371. Admittedly there was no direct evidence on the subject in this case. We would have some doubt as to whether the circumstantial evidence was sufficient to warrant the submission were it not for the precedent established by the Supreme Court in Cordray v. City of Brookfield, Mo., 88 S.W.2d 161, which we are bound to follow. In that case it was held that proof that plaintiff "had purchased medicine used in the treatment and alleviation of (his) resulting injuries aggregating between $218 and $243; that he had paid out cash therefor of 'about $175 to $200,' and 'owed a balance of $43' at a certain drug store," without more, authorized submission of that item to the jury; and, further, that evidence establishing merely that "plaintiff was yet indebted * * * in the sum of $1,195" for doctor bills authorized a recovery for that item, 88 S.W.2d 1. c. 164, "when it is considered that the evidence was that his (the doctor's) services had continued at regular intervals over a period of four or five years; that he was a reputable physician; that there was no evidence tending to show collusion or bad faith; that defendant did not question the

reasonableness of the account; and that the plaintiff acknowledged the indebtedness * * *. Nothing whatsoever to the contrary appearing, we must presume and ascribe honest motives, good faith, and right conduct." All those considerations are established by, or are legitimately inferable from, the evidence in this case. Moreover, the liberal view reflected in the Cordray case has been adopted in three quite recent cases decided by the Kansas City Court of Appeals. Hay v. Ham, Mo. App., 364 S.W.2d 118, 126; Wise v. Towse, Mo.App., 366 S.W.2d 506, 508; and Mullendore v. Gentry, Mo.App., 377 S.W.2d 494, 1. c. 497. If there is a conflict between the Spica case and the Cordray case on this subject, then until it is resolved by the court that created it, we can hardly convict the trial court of error for following, as did the Kansas City Court of Appeals, the example of the latter.

■ *Third:* Plaintiff was a commercial artist in business for himself under the name of "Sparling Studios". We gather, almost entirely by inference, that it was a one-man operation in which his probably insignificant capital investment "was merely incidental to the performance of his personal services." In such case proof of loss of profits is tantamount to proof of loss of earnings. Fishang v. Eyermann Contracting Co., 333 Mo. 874, 63 S.W.2d 30, 36. As the result of his accident plaintiff was "away from his business completely" for "probably around four weeks," and was "on a part time basis" thereafter for "perhaps three months, four months." He declined an invitation extended both by the court and defendant's attorney to show his average earnings for any period whatever, either before or after the date of his accident. Instead, he contented himself with testifying that in each of the two years immediately preceding his accident he had done the art work on a brochure printed by Western Lithograph Company, and that "this job ran approximately eighteen hundred or two thousand, twenty-one hundred dollars;" but he gave no estimate nor any

evidence from which an estimate might be made as to the net profit, if any, realized from that work. He then explained that on the day before the accident he had received a telephone call from a representative of Western regarding "a similar job," but when he was hospitalized negotiations were broken off and no contract for the work was ever reached. There was no further testimony with regard to this item. Asked if in the previous year he had done "any work" for Salem Printing Company or Webster Publishing Company, he replied, simply, "Yes, sir," with no hint of the amount involved or the profit that may have accrued from it. And the speculation invited by that approach to the problem was hardly relieved by his further statement that since his accident he had done "some" work for both companies, "but it fell off." That was the evidence. Plaintiff's measure of damages instruction authorized the jury to take into consideration "(s)uch loss of earnings, if any, as you find from the evidence that Mr. Sparling has suffered as a direct result" of the accident. Defendant says there was no evidence to support that submission. We agree. "In order to recover for a loss of past earnings as special damages, the evidence as to the value thereof must be reasonably certain, so as to eliminate mere speculation. Or, as sometimes expressed, the evidence must afford a basis for a reasonable estimate of the amount of the loss." Seymour v. House, Mo., 305 S.W.2d 1, 3–4; Murphy v. St. Louis Public Service Co., 362 Mo. 772, 244 S.W.2d 31, 35–6. No such basis is afforded in this case. The elasticity of our indulgence, already hyper-extended in this case, reaches its limit short of approving a submission which necessarily requires the jury to exhaust the ultimate resources of its imagination in order to supply the information essential to a proper verdict.

Since no complaint is made as to the sufficiency of the evidence on the issue of defendant's liability, the judgment of the court should be reversed and the cause remanded for a new trial on the issue of damages only.

It is so ordered.

RUDDY, P. J., and ANDERSON, J., concur.

WOLFE, J., not participating.