**Elmo L. SEYMOUR, Respondent,**

v.

**Hubert HOUSE, Appellant.**

No. 45648.

Supreme Court of Missouri,
Division No. 2.

Sept. 9, 1957.

Paul C. Sprinkle, Sprinkle, Knowles & Carter, Kansas City, for appellant.

Brandom & Brandom, by Smith F. Brandom, Kansas City, for respondent.

EAGER, Presiding Judge.

This is a suit for personal injuries sustained in an automobile collision in Kansas City on June 12, 1954. Plaintiff recovered a verdict and judgment in the sum of $10,000 and defendant has appealed, after the overruling of his after-trial motions. Liability is not contested here; defendant drove his car into the rear of plaintiff's car which was stopped at an intersection. The injury claimed, of which there was substantial evidence, was a "whip-lash" injury to plaintiff's neck. The only questions raised here concern damages; they are, more specifically, as follows: (a) error in the admission of evidence to show supposed special damages in loss of earnings or profits; (b) error in plaintiff's damage instruction; and (c) alleged excessiveness of the verdict. We shall not reach the last point, but discuss the first two.

Plaintiff testified that he was and had been in the concrete construction business;

most of his business apparently came from taking subcontracts from general contractors for concrete work. The number of his employees varied from time to time; he testified first that at the time of the accident he was employing approximately 10 men, and later said, probably 10 to 15; the number of employees necessarily varied with the volume of work on hand. Plaintiff obtained the jobs, dealing with the contractors and with others, supervised all the work, and ran the business generally; in addition to this, he testified that prior to his injury he worked regularly as a cement finisher, and actually was the "number one" finisher. This means, as we understand, that if only one finisher was required at any given time, plaintiff did that work himself, but other finishers were more or less regularly employed and he worked with them; often two or more worked on the same job. Finishing concrete involved tamping the poured concrete with a heavy "jitterbug," leveling it with a long-handled "bull-paddle," and then getting down on knee-boards and giving the final smoothing with a steel trowel. Plaintiff further testified that since his injury he had been wholly unable to work as a finisher, although he had, almost from the time of the injury, performed other work in supervising, dealing with contractors, taking on jobs, and generally running the business.

The evidentiary controversy here arises principally over the admission of evidence to the effect that plaintiff had paid $9,035.60 from June 16, 1954, to December 30, 1955, to one Edward Bryant as a cement finisher on various jobs. Plaintiff testified that this man took his place after the injury as the number one finisher, but it was established that Bryant had previously been in his employ for some time as a finisher. The objections were that this evidence of a supposed loss or damage was highly speculative, that "it depends on" how many jobs the plaintiff had, how many men he had working, how much time plaintiff himself spent in supervision, and that there were so many "angles" involved that the offered

proof would only tend to prejudice the jury. Considerable colloquy took place, and the court very understandably indicated that the situation was confusing; the theory of plaintiff was that Bryant had taken *his* place as cement finisher and cement foreman (as plaintiff testified); that some other man had taken Bryant's place, and jobs had shifted up and down the line, but that Bryant thus became (instead of plaintiff) the number one finisher who worked steadily whenever there was any of that work to do, acting also as the finisher foreman. At the time of the injury plaintiff apparently had three other finishers working, but he insisted that his own incapacity meant that thereafter there was at least one extra person on the payroll. Bryant's wages had been raised when he moved up. It is perfectly obvious that the number of finishers needed and used varied from time to time during the period of nearly two years between the injury and the trial. The court refused (and properly) to permit plaintiff to answer a question asking whether the figure of $9,035.60 was "the amount * * * that you would have earned and saved to yourself on that job"; however, such was plaintiff's theory, as indicated by his total testimony. Some of plaintiff's contracts did not involve finishing concrete, but perhaps only a fourth, or less. Plaintiff could not say that he had had any "less number of contracts" since the accident than before.

The situation is further complicated by the fact that the business was conducted in the name of · plaintiff's wife, Jewell Seymour. The evidence indicated that this was a "straw" transaction, apparently effected to avoid union entanglements, due to the fact that plaintiff both ran the business and worked in it as a finisher. Plaintiff had a power of attorney and drew all checks; his wife testified that she knew nothing about the business, took nothing out of it, wrote no checks, had put no money into it, and, in effect, had nothing to do with the business. She had a job of her own at Montgomery Ward's. At one point, however, plaintiff testified that his wife got "any profits in the company," but that he thought that anything she would get would be "partially mine." Plaintiff further testified that when there was money, and he needed money, he took it; that he was paid no regular salary before or after the injury, but that he paid himself a salary part of the time; that when he took a salary, returns were made for withholding and social security taxes; business records were kept, and plaintiff and his wife made joint income tax returns, but none of these were produced. There was a total absence of evidence of the amounts which plaintiff had actually received as compensation, either before or after the injury, and of the profits of the business, either before or after the injury; plaintiff was permitted to testify that the profits had been lessened because he would have earned the wages which he had paid out, as discussed, and because one less man would have been employed.

The injury to plaintiff's neck consisted primarily of a swelling of soft tissues around certain nerve roots, injury to cartilaginous and ligamentous areas, and a consequent limitation of motion of the neck and pain upon extreme motion.

■ Ordinarily a plaintiff claiming personal injuries may prove a resulting loss of time, and a consequent loss of personal earnings or wages as an item of special damages. 15 Am.Jur., Damages, § 88, p. 498; Liles v. Associated Transports, Inc., 359 Mo. 87, 220 S.W.2d 36; Fellows v. Kansas City Public Service Co., Mo.App., 270 S.W.2d 108. Generally, this is limited to earnings which are the result of personal effort. 15 Am.Jur., Damages, § 88, p. 498. Also, one may generally recover for a loss of future earnings as included in a recovery for impairment of his earning capacity, provided such is shown with reasonable certainty, and is not speculative in character. 15 Am.Jur., Damages, § 88, p. 498; 25 C.J.S. Damages, § 38, p. 511. In order to recover for a loss of past earn-

ings as special damages, the evidence as to the value thereof must be reasonably certain, so as to eliminate mere speculation. Fishang v. Eyermann Contracting Co., 333 Mo. 874, 63 S.W.2d 30, 36; Burns v. Kansas City Public Service Co., Mo., 273 S.W.2d 184; Sinclair v. Columbia Telephone Co., Mo.App., 195 S.W. 558; Bollinger v. American Asphalt Roof Corp., 224 Mo.App. 98, 19 S.W.2d 544. Or, as sometimes expressed, the evidence must afford a basis for a reasonable estimate of the amount of the loss. 15 Am.Jur., supra, § 90, p. 500. A distinction is almost universally made between a loss of personal earnings and the loss of business profits. Pryor v. Metropolitan Street Ry., 85 Mo. App. 367, 372; Bollinger v. American Asphalt Roof Corp., 224 Mo.App. 98, 19 S.W.2d 544; Flintjer v. Kansas City, Mo. App., 204 S.W. 951; 25 C.J.S., Damages, § 86, p. 618.

▮ It has often been said that the plaintiff in a personal injury action may not recover, as special damages, a loss of business profits, for the reason that such profits are wholly speculative, or because such profits arise, in whole or in part, from elements other than his personal efforts and earnings. Pryor v. Metropolitan Street Ry., 85 Mo.App. 367, 372; Flintjer v. Kansas City, Mo.App., 204 S.W. 951; 12 A.L.R. 2d 291, note. In many such cases all evidence of loss of profits has been held inadmissible. 12 A.L.R.2d 296, note. In the facts of those cases, generally, the elements of invested capital, employed labor, and other variable factors in the plaintiff's business predominated over the element of personal service and earnings of the plaintiff himself. In other cases, where the element of personal service predominated and the elements of capital, labor, etc., were not so material, it has been held that evidence of a loss of profits may generally be shown as an aid in determining the pecuniary value of plaintiff's loss of time or impairment of earning capacity. 12 A.L.R. 2d 297–299, note; 25 C.J.S., Damages, § 86, p. 618; Fishang v. Eyermann Contract-

ing Co., 333 Mo. 874, 63 S.W.2d 30; Laycock v. United Railways Co. of St Louis, Banc, 290 Mo. 344, 235 S.W. 91, 95; Sinclair v. Columbia Telephone Co., Mo.App., 195 S.W. 558; Stewart v. St. Louis Public Service Co., Mo.App., 233 S.W.2d 759; Northcutt v. St. Louis Public Service Co., Mo.App., 48 S.W.2d 89. Probably, the true rule is that evidence of loss of profits is admissible where it would have a material bearing on the actual value of plaintiff's own services and work in the business and the pecuniary value of his lost time, but not as proof of a distinct element of damage in and of itself. 25 C.J.S., Damages, § 86, pp. 618–619; 15 Am. Jur., Damages, § 96, pp. 506–507. Other evidence should be adduced making the showing of materiality.

▮ In the light of such principles let us now look at the evidence. We shall assume, as the evidence generally indicates, that plaintiff's wife was merely a "straw," and that the business was his; perhaps, in view of plaintiff's very equivocal testimony, he is not entitled to such consideration. Counsel for plaintiff insisted that they were merely seeking to show plaintiff's loss of earnings, and not a loss of profits of his business. It seems entirely obvious to us that a mere showing that Bryant was paid $9,035.60 after plaintiff's injury did not and could not, in and of itself, prove that plaintiff had lost that amount, as earnings or otherwise. Plaintiff had gone on supervising and running the business, almost from the time of his injury, and there was no effort whatever to show what these services were worth; he may have earned more for his business by increased activities in management than he lost by refraining from the physical labor. It is true that he had run the business previously, but there is no showing of the comparative amounts of time spent in so doing, or of the comparative results, before and after the injury. One cannot say that plaintiff, individually, lost earnings represented by the entire amount paid to Bryant; he was presumably utilizing the ex-

tra time he gained by not working as a cement finisher. There is absolutely no showing of what plaintiff actually received as compensation, either before or after the injury, although he had records available to show that. Since plaintiff was paid no regular "salary" at any time, and merely took money out of the business as it was available and as he needed it, it would seem that evidence of the payment to Bryant was more properly an element of a possible loss of profits, rather than evidence of lost earnings of plaintiff individually, despite counsel's protestations to the contrary. It seems rather clear that plaintiff simply received the profits, instead of a salary or wages. The primary effect of any additional payment of wages would be to reduce profits. As evidence of loss of profits, this evidence alone was wholly insufficient. If plaintiff can make a substantial showing that the capital invested in this business was relatively insignificant, and that the success of the business was predominantly dependent upon his personal efforts, initiative and services, a proper showing of a loss of profits might be admissible. This is not to say that plaintiff can recover a loss of profits, as such, as an element of special damages, but it would be admissible, if at all, solely as bearing upon the pecuniary value of plaintiff's services in the business. In that connection circumstances such as the comparative number of jobs or volume of work and any unusual fluctuations or changes, before and after the injury, should also be developed, in order to afford a fair comparison of the periods. On the other hand, the trial court might well determine from the evidence at another trial, and under the principles heretofore stated, that no evidence of loss of profits should be admitted. In any event, evidence of the payment of $9,035.60 to Bryant, standing alone and unsupported, afforded nothing more than an opportunity for speculation, in so far as it was offered to prove plaintiff's supposed lost earnings. There being no offer to connect this up, or support it by such evidence as suggested above, it

should not have been admitted, and we hold that its admission constituted prejudicial error. The case of Fishang v. Eyermann Contracting Co., 333 Mo. 874, 63 S.W.2d 30, is worthy of note here, though not cited by either party. There, however, the business involved was more of a "one-man affair" than the present business, and there was proof of several necessary elements which are wholly missing in the present case.

In the case of Liles v. Associated Transports, Inc., 359 Mo. 87, 220 S.W.2d 36, cited by plaintiff, evidence was admitted of the amounts which the plaintiff had paid his two sons to do his work in a cleaning business after his injury. In that case, however, there was evidence (at least by a permitted estimate) of the total loss of profits, and plaintiff had done no work whatever, supervisory or otherwise, since his injury; also, the sons had not been working in the business previously. The facts distinguish that case from ours. Plaintiff also cites the case of Flintjer v. Kansas City, Mo.App., 204 S.W. 951. It was held there that the evidence failed to show whether plaintiff was an employee or a partner, and that a loss of wages might be recovered as an item of special damages, but not a loss of profits as a partner; the court also held that under the evidence there it was error to include any loss of earnings in the damage instruction. That case does not aid the present plaintiff. In the case of Bradfield v. Kansas City, Mo.App., 204 S.W. 819, also cited, plaintiff had been forced to quit work as a saleswoman, but continued her work of renting rooms. It was held that she was entitled to her full loss of wages as a saleswoman, there being apparently specific evidence as to the amount of salary or wages so lost. That case is of no material importance upon our facts.

Plaintiff's damage instruction (No. 3) was in part as follows: "The Court instructs the jury that if your verdict is for the plaintiff then in estimating and deter-

mining his damages, if any, the jury will take into consideration his age and nature and extent of his injuries, and whether they are temporary or permanent, if any, which the jury shall find and believe from the evidence to be the direct result of the collision referred to in evidence, if any, any physical pain and mental anguish, if any, as the jury shall find and believe from the evidence he will, with reasonable certainty, hereafter suffer as a direct result of the collision referred to in evidence, if any; the sum or sums of money, if any, necessarily expended by him or which he is obligated to expend for doctors and medical attention, if any, any earnings, if any, heretofore necessarily lost by plaintiff and any impairment, if any, of plaintiff's ability to work and earn money hereafter as a direct result of such injuries as he received, if any, * * *."

■ We hold that there was no substantial evidence upon which plaintiff's lost earnings could be submitted to the jury. The same ruling would follow had we ruled the evidence of the payment to Bryant admissible. This is apparent from our previous discussion of the evidence. Under the present evidence the jury could only speculate on that question. And, on the same principle, there should have been substantial evidence of the supposed past loss of earnings to support a finding on the value of the supposed impairment of plaintiff's ability to work and earn in the future; any finding of such "impairment" and its pecuniary value must be based upon evidence which would permit the jury to arrive at a reasonable estimate of the future loss; it may not rest merely upon speculation. We hold the instruction erroneous for these reasons. Upon another trial the instruction must be reframed (so far as loss of "earnings" is concerned) to fit the type of evidence which plaintiff may produce, for certainly plaintiff was not an employee in the ordinary sense and his irregular compensation can hardly be said to be "earnings" in the usual sense.

■ Other complaints are made of the instruction; we discuss these briefly only because of the probability of another trial. One of these is that the instruction permits "double compensation." This argument is not elucidated too clearly. Generally, a submission of a past "loss of earnings" and of an impairment of future earning ability (as here) are not held to constitute a duplication, for they relate to different periods of time. Defendant cites the cases of Wolfe v. Kansas City, 334 Mo. 796, 68 S.W.2d 821, Evans v. Farmers' Elevator Co., 347 Mo. 326, 147 S.W.2d 593, and Murphy v. St. Louis Public Service Co., 362 Mo. 772, 244 S.W.2d 31. These cases hold, in effect, that the present impairment of the ability to work and earn in the future is an element of damage, but that this is included in the compensation for the injuries themselves, and is in fact a part of the injuries; that, therefore, the submission of such impairment, along with a submission of permanent injuries, permits the recovery of double compensation for the same item of damages; the Wolfe case (cited here by both sides) distinguishes between such present impairment of the *power* to work, and the probable actual loss of time and earnings in the future, the latter of which, it indicates, may be properly submitted as an item of special damages, in addition to the injuries, if sufficiently supported by the evidence. See, also, Davidson v. St. Louis Transit Co., 211 Mo. 320, 109 S.W. 583, 589, where wording rather similar to that in the present instruction concerning future impairment was construed as a submission of compensation for probable loss of time and earnings in the future. And the instruction in the Wolfe case was held not to include a double submission. We think that the words here "impairment, if any, of plaintiff's ability to work and earn money hereafter," may be said to constitute a submission of the loss of probable future earnings; however, it would certainly be advisable to reframe the instruction in this respect at another trial to avoid the claimed "double

submission," especially in view of the complicated nature of the problem, as discussed in the cited cases, and others. We note also that the wording in the instruction held erroneous in the Murphy case, supra, as being a submission of double compensation, is very similar, in substance, to some of the wording in the instruction now complained of.

In the recent case of Moss v. Mindlin's Inc., Mo., 301 S.W.2d 761, it was held that an instruction was not erroneous which told the jury that it might take into consideration various elements, including pain, the nature, character and extent of the injuries, all impairment of earning power, and other elements, awarding to plaintiff, however, damages in such amount as would reasonably compensate him. The defendant there insisted that these elements permitted double, triple and quadruple compensation. The court criticized the instruction as verbose and complicated, but said that it was not prejudicially erroneous since it told the jury to assess plaintiff's damages in such an amount as would properly and reasonably compensate plaintiff for all his injuries, and that the items specified were "matters which the jury may consider in assessing the damages correctly *directed* in the first paragraph." The court there disagreed with the conclusion of "double compensation" contained in the opinion in the Murphy case, supra.

We need not resolve this conflict, for we have discussed the latter feature of the instruction merely to point out its weaknesses in view of another trial. It was clearly prejudicial to allow the jury to speculate upon supposed lost earnings, past or future, without substantial evidence upon which it might intelligently base an estimate.

For the errors in the admission of evidence and in giving Instruction No. 3, the judgment is reversed and the cause remanded. It is so ordered.

All concur.