**E. L. BISCHOFF, Plaintiff-Appellant,**

**v.**

**Minnie A. DODSON, Defendant-Respondent.**

**No. 8461.**

Springfield Court of Appeals.

Missouri.

June 30, 1966.

Motion for Rehearing Denied
July 28, 1966.

Gerald H. Lowther, James K. Prewitt, Miller, Fairman, Sanford, Carr & Lowther, Stephen L. Hill, Allen, Woolsey & Fisher, Springfield, for plaintiff-appellant.

B. H. Clampett, W. Ray Daniel, Daniel, Clampett, Ellis, Rittershouse & Dalton, Springfield, for defendant-respondent.

HOGAN, Judge.

(1) This is an action for personal injuries sustained in the collision of two automobiles. Plaintiff had a verdict and judgment in the sum of $7,000.00; but, upon defendant's motion, the trial court granted a new trial on the issue of damages only, basing its order upon the erroneous recep-

tion of evidence. The plaintiff has appealed from the order granting a new trial. The defendant, though maintaining the new trial was properly granted, questions the submissibility of the plaintiff's case. In point of fact, the parties have briefed and argued a number of points, but we find it necessary to consider the essential merits of only two of them. They are: 1) whether, as the defendant maintains, the plaintiff was contributorily negligent as a matter of law; and 2) whether the reception of evidence to show the plaintiff's loss of past earnings was error justifying the grant of a new trial. We need not discuss the procedural aspects of the appeal which the defendant has briefed, though we appreciate her having done so; we think she is entitled to have the submissibility of plaintiff's case reviewed, at least to the limited extent she requests it. In any case the point is not questioned, and we simply assume that the so-called "submissibility error," if any, is before us. Gibbs v. Bardahl Oil Co., Mo., 331 S.W.2d 614, 620 [1]; Millar v. Berg, Mo., 316 S.W.2d 499, 502–503 [3].

The casualty here involved occurred on December 9, 1963, at the intersection of Grant and Mt. Vernon Streets in Springfield, Missouri. Grant runs north and south, Mt. Vernon east and west, and the two intersect substantially at right angles. Grant, which is a favored or "through" street, is 42 feet wide, and Mt. Vernon is 30 feet wide. Both are paved streets. At the southwest corner of the intersection, there is a brick building "approximately 7 or 8 feet" south of the south curb line of Mt. Vernon and about the same distance west of the west curb line of Grant. There is a stop sign for eastbound traffic on the south side of Mt. Vernon, a short distance west of the intersection.

Plaintiff, who described his occupation as being a "truck salesman for Sunray DX Oil Company," was going north on Grant. He was driving a "ton and a half truck" with an 800-gallon tank on it. This vehicle, with the tank empty, weighed about 6,000 pounds. Defendant was driving east in a Ford station wagon. Both parties described the weather as being "clear," and there were no vehicles parked around the intersection at the time. The accident happened about 11:15 or 11:20 A.M.

As plaintiff described the sequence of events on trial, he was traveling north on Grant in the east or northbound lane, going "less than 20 [miles per hour], anyway *' * *." As one travels north on Grant, the view west on Mt. Vernon is obstructed "until you get * * * approximately to the corner." When Mr. Bischoff came to a point about even with "the middle of the building," so that according to his best judgment he was about 20 feet south of the south curb line of Mt. Vernon, he looked to the west and saw no traffic approaching. Plaintiff then glanced to the right, and then, looking straight ahead, proceeded into the intersection. He did not see the defendant's station wagon prior to the collision, but as the front wheels were "at least on the north curb to the intersection," Mr. Bischoff "thought a bomb had hit the top of my cab"; the "back end slid around then rolled," and the truck overturned. After the impact, the Bischoff vehicle was located north of the intersection "several feet on its back."

Mrs. Dodson, who was on her way to a social engagement, testified that she left her home some distance west on Mt. Vernon Street a short time before the accident, and drove "just straight" on Mt. Vernon to the intersection. When she came to the intersection, Mrs. Dodson "pulled the front up where I could see both ways, north and south, and * * * I didn't see anything coming, and I just started on out across the street * * * and the next thing I knew, the truck ran over me, that's all." Defendant estimated that she had stopped as long as five seconds before entering the intersection, that she was driving only five miles per hour at the time of impact, and that the collision occurred when she was "almost completely across the street." Mrs. Dodson estimated that she was within

18 inches of the west curb line of Grant when she stopped to look, and that when she stopped, while she couldn't "swear" she could see two blocks to the south, she could see " * * * close to it, I'd say." Defendant "never saw the truck."

Other evidence was introduced, along with a number of exhibits. We shall note some of this evidence, as it relates to the points raised, in the course of the opinion.

The respondent's specific point dealing with the submissibility of plaintiff's case is that since Mr. Bischoff failed to see the Dodson vehicle prior to the collision, he was guilty of contributory negligence as a matter of law. The burden of respondent's argument seems to be that plaintiff, if he had maintained a proper lookout, could and should have seen the defendant in time to avoid the collision, and should have acted to do so. In support of her point, defendant cites and quotes from a number of cases which stress the relative and reciprocal nature of the rights and duties created by traffic statutes, such as Lamfers v. Licklider, Mo., 332 S.W.2d 882, Pitts v. Garner, Mo., 321 S.W.2d 509, and Witt v. Peterson, Mo., 310 S.W.2d 857.

■ We have recited the facts as we have precisely to show that the oral evidence, at least, was irreconcilably in conflict. Clearly, reasonable minds might have resolved the issues of negligence and contributory negligence by concluding that both drivers were distracted or inattentive and that both were materially at fault, but that does not carry the conclusion that defendant was entitled to a directed verdict because of plaintiff's contributory negligence. A plaintiff is to be held guilty of contributory negligence as a matter of law only when the evidence most favorable to his submission, together with the inferences permissible therefrom, allow no other reasonable conclusion. Otherwise, the plaintiff's contributory negligence is a jury question. Moore v. Ready Mixed Concrete Co., Mo., 329 S.W.2d 14, 19 [1]; Kickham v. Carter, Mo., 314 S.W.2d 902, 908–909

[8] [9]; Jones v. Fritz, Mo.App., 353 S.W. 2d 393, 399 [11].

The respondent emphasizes Mr. Bischoff's testimony that he never saw the Dodson car before the collision, and his statement in response to counsel's question that one can see "a thousand or two thousand feet" back to the south "when you get on up to the curb line, the west curb line [of Grant]." One of the investigating officers, called as plaintiff's witness, also testified that "when the front of your car is even with the west curb line of Grant * * * you can see to State Street unless parking on the west side * * * obstructs your view." The record evidence was that there were no automobiles parked along the west side of Grant near the intersection. Mrs. Dodson testified, as we have indicated, that she " * * * pulled the front [of the car] up where I could see both ways," looked in both directions, and saw nothing coming. Defendant estimated that she was stopped " * * * I'd say at least five seconds."

A somewhat complicating and contradictory feature of the evidence is that both the plaintiff and the investigating officer testified that the view on Mt. Vernon is obscured for a northbound motorist, in plaintiff's words, until "you get to the corner, approximately to the corner." The investigating officer's evidence was that "it wouldn't be a blind intersection. You could see before you entered the intersection." The officer answered "yes" to counsel's suggestion that he meant "just before you get to the intersection." Some of the exhibits of both parties indicate that on the southwest corner of the intersection there is an array of poles, signs and guy wires, which may have interfered with both plaintiff's and defendant's view. The record evidence thus suggests that the unobstructed view ahead and laterally may not have been the same for both plaintiff and defendant.

■ In any case, we think the defendant's argument overstates the measure of

plaintiff's duty. Though we have no doubt that if the defendant had already preempted the intersection before plaintiff entered, it was plaintiff's duty to exercise the highest degree of care to allow defendant to pass in safety, Creech v. Blackwell, Mo., 298 S.W.2d 394, 400 [5] [6]; Jones v. Fritz, supra, 353 S.W.2d at 397–398 [9], and plaintiff had no unrestricted right to enter the intersection in disregard of motorists on the intersecting street, Pitts v. Garner, supra, 321 S.W.2d at 518; Jones v. Fritz, supra, 353 S.W.2d at 397; still the plaintiff's duty to take evasive action (as defendant concedes) did not arise until it appeared to him, in the exercise of the highest degree of care, that defendant would not or could not stop short of his path. Pitts v. Garner, supra, 321 S.W.2d at 518 [11]; Myers v. Karchmer, Mo., 313 S.W.2d 697, 704 [8]; Collier v. St. Louis Public Service Co., Mo.App., 298 S.W.2d 455, 460 [4]. So far as plaintiff's failure to see the defendant is concerned, we reiterate that plaintiff was under no duty to maintain a continuous lookout in one direction, Slaughter v. Myers, Mo., 335 S.W.2d 50, 54 [6]; Pitts v. Garner, supra, 321 S.W.2d at 518–519; Jones v. Fritz, supra, 353 S.W.2d at 398, and whether a driver is negligent in failing to keep a lookout in a particular direction, and has thereby failed to see all he should have seen, is usually a jury question. Slaughter v. Myers, supra, 335 S.W.2d at 54 [6]; Cox v. Moore, Mo.App., 394 S.W.2d 65, 70 [13]; 61 C.J.S. Motor Vehicles § 526, pp. 437–438. The real weakness of respondent's position is, however, that the record affords no basis for determining, with reasonable accuracy and confidence, the position of either vehicle when plaintiff's duty to act arose, and no foundation for holding that the plaintiff could thereafter have avoided the collision. Though the two cases are factually different, the rationale of this court's opinion in Jones v. Fritz, supra, 353 S.W.2d at 398–399, is apt here, and we decline to hold the plaintiff guilty of contributory negligence as a matter of law.

The other point for discussion is whether a new trial was properly granted because of the erroneous reception of evidence. The trial court's order specified that a new trial was granted because " * * * under the decision of the Supreme Court in the case of Seymour v. House [Mo., 305 S.W. 2d 1] * * * the admission of testimony over the objection of the defendant as to the amounts paid by the plaintiff for a substitute driver, without any qualifying evidence as to the profits of the business, was erroneous. This error [was] further compounded by the instruction on the measure of damages which especially singles out this evidence and emphasizes it."

Plaintiff described himself as a "truck salesman." He said that his work consisted of making deliveries to service stations in a "specified territory." Aside from this evidence, the nature of his occupation is not shown. The record before us does not disclose how Mr. Bischoff computed his earnings, nor the amount of his business earnings, or "profits," for any monthly or yearly period, either before or after the accident. It was shown that plaintiff kept records; in response to defendant's qualifying interrogation, plaintiff answered affirmatively when he was asked if his records " * * * reflect fully the amount of your sales, your operating expenses and any expenditures you make for help and employment." Plaintiff did not produce, or offer to produce, those records. He did testify, over the defendant's objection, that he estimated he had lost " * * * around $125.00 a month," when he was asked by his counsel "how much money" he had lost from his business as a result of the accident, and he amplified this by saying later that "my statements will show I'm making about the same as I made last year, and I've received two new accounts that makes me about $125.00 a month, two new dealers. So, I've lost something somewhere." Mr. Bischoff also testified that, after the accident, he became unable to operate his route and was obliged to employ a Mr. Clutter to drive his truck. He ac-

companied Mr. Clutter in the truck, however, because "he [Clutter] didn't know the route, didn't know the ones that needed attention, and I made tickets and it kind of speeded things up a little * * *." Plaintiff testified he paid Clutter $148.45 for his services. Also, because of his injuries, plaintiff said he was obliged to employ his sons, Larry and Bill, to assist him in the "next few months" following the accident, and he paid them "around $900.00." Aside from being "off" work intermittently, Mr. Bischoff was away from work "completely all day" for fifty-eight days. We note from plaintiff's medical evidence that in 1962 he developed a cardiac ailment and was advised to restrict his activity, though it is not clear from the record whether he did so, prior to the accident.

The defendant's position is that this case is closely analogous to Seymour v. House, supra, 305 S.W.2d 1; she maintained in the trial court, and argues here, that the plaintiff failed to present enough evidence for a jury to make a reasonable estimate of plaintiff's loss of earnings, if any, and in any case, she says, the proof of payments made to substitutes or additional employees should not have been admitted. The appellant, on the other hand, insists that the trial court misconstrued the Seymour opinion, and maintains that his evidence concerning loss of past earnings was admissible, and proper for the jury to consider, citing Fishang v. Eyermann Contracting Co., 333 Mo. 874, 63 S.W.2d 30, and Liles v. Associated Transports, Inc., 359 Mo. 87, 220 S.W.2d 36, in support of his position.

■ There is no need in this case to consider at length the various principles of law stated in Seymour v. House, supra, 305 S.W.2d 1, and we emphasize that we undertake no judicial gloss on that opinion. In that case, the Supreme Court held, among other things, that a plaintiff claiming personal injuries may ordinarily prove a resulting loss of time and a consequent loss of personal earnings or wages as an item of special damages, but generally the re-covery of business profits, as such, is denied. Seymour v. House, supra, 305 S.W. 2d at 3, 4 [1] [4]. As the appellant correctly states, and as the Seymour opinion notes, there are some cases, like the Fishang case, supra, in which evidence of loss of profits has been received on the theory that plaintiff's profits or earnings were really in the nature of personal earnings. Fishang v. Eyermann Contracting Co., supra, 333 Mo. at 886, 63 S.W.2d at 36. If a plaintiff makes a substantial showing that the capital invested in his business was relatively insignificant, and that the success of his business was predominantly dependent upon his personal effort and initiative, then loss of profits can be shown, but only as an aid in determining the pecuniary value of plaintiff's services in the business. Seymour v. House, supra, 305 S.W.2d at 5. We agree with the appellant that one might infer that Mr. Bischoff's business was a "one-man affair," but the Seymour opinion seems to require more than an inference; it speaks of a substantial showing.

■ However that may be, we believe the trial court's ruling was correct. The Seymour case, and many others, hold that if a plaintiff seeks to show a loss of past business earnings, or "profits," it must appear that the loss is the proximate result of the injury, and the evidence thereof must be certain enough to afford a basis for a reasonable estimate of the amount of loss. Hargis v. Sample, Mo., 306 S.W.2d 564, 569 [7]; Seymour v. House, supra, 305 S.W.2d at 3–4 [1–3]; Burns v. Kansas City Public Service Co., Mo., 273 S.W.2d 184, 190 [3]; Anno., 12 A.L.R.2d 291, 292–301, Sections 3–6 (1950). In Moss v. Mindlin's, Incorporated, Mo., 301 S.W.2d 761, the court rejected an estimate of loss of past earnings considerably more explicit than plaintiff's estimate in the present case, stating, 301 S.W.2d at 773, that " * * * [t]he burden was on plaintiff to prove loss of past earnings with some reasonable certainty—i. e., to prove the fact and amount of loss at least by the best evidence avail-

able. * * *" Although we do not agree with respondent's implied suggestion that books of account are always indispensable, the record before us furnishes no basis whatever for determining what Mr. Bischoff's loss of earnings was. Presumably, he received the net earnings of his business, but the jury was not advised how he calculated them. No figure is given either for 1963 or 1964, nor is there any proof of circumstances from which a jury might infer that whatever loss plaintiff sustained was caused by the injury rather than by his previously impaired ability to work, or by the other variable circumstances which may reduce business earnings. As evidence of loss of earnings, the proof of payments made to Clutter and to plaintiff's sons was wholly speculative and inconclusive, and we believe the admission of such evidence constituted prejudicial error.

We need not consider the abstract correctness of the instruction offered by plaintiff on the measure of damages. Plaintiff contends that it is a rescript of that approved in Moss v. Mindlin's, Incorporated, supra, 301 S.W.2d at 768–769 [7], but we do not wholly agree. Instruction 2 in Moss v. Mindlin's, Incorporated, advised the jury that, in assessing plaintiff's damages, they might take into consideration " * * * all actual loss of wages and earnings as you may find and believe from the evidence the plaintiff has suffered as a direct result of said injuries," whereas this instruction does not mention loss of past earnings as such, but advises the jury that they may consider " * * * all payments of wages * * * the plaintiff was required to pay as a direct result of said injuries." It does thus call attention, as the trial court says, to the inadmissible evidence. Whether or not the giving of this instruction alone would have warranted a new trial, we need not decide.

It is elementary that trial courts have discretionary authority to grant a new trial because of error affecting the determination of fact issues, Ryan v. Campbell "66" Express, Inc., Mo., 304 S.W.2d 825, 827 [1], and, given the proposition that evidence was erroneously admitted, it is for the trial court to determine its prejudicial effect. Gray v. St. Louis-San Francisco Ry. Co., 363 Mo. 864, 872, 254 S.W.2d 577, 580 [3, 4]. We consider that the evidence objected to by the defendant was erroneously admitted, and we further consider that it was proper to grant a new trial. It is also within the authority of the trial court to grant a new trial as to the issue of damages only, Rule 78.01, V.A.M.R.; Lilly v. Boswell, 362 Mo. 444, 456, 242 S.W.2d 73, 78 [13], but upon consideration of the whole record, we believe a retrial of all the issues should be had. We are in agreement with the general principle that, where there is no error except such as affects the amount of damages, a new trial can and often should be limited to the issue of damages, Anno., 85 A.L.R.2d 9, 80–83, but there is no set rule which governs this question in every case. It has been recognized, both directly and impliedly, that in cases of the kind involved here the highly conflicting nature of the evidence may make it practically impossible to try the issue of damages separately from the issue of liability with fairness to the litigants, Pinkston v. McClanahan, Mo., 350 S.W.2d 724, 729 [7]; Ziervogel v. Royal Packing Co., Mo.App., 225 S.W.2d 798, 806, and we are convinced that is true here. For the reasons indicated, the judgment is modified, and as modified is affirmed, and the cause is remanded for a new trial on all issues.

STONE, P. J., concurs.