Warren TERRY and Virginia Terry,
Plaintiffs-Respondents,

v.

Emmett Willis HOUK,
Defendant-Appellant.

No. WD 32773.

Missouri Court of Appeals,
Western District.

Sept. 21, 1982.

William J. Cason, Michael X. Edgett, Fred R. Bunch, Clinton, for defendant-appellant.

George R. Lilleston, Clinton, for respondent.

Before KENNEDY, P.J., and WASSERSTROM and MANFORD, JJ.

WASSERSTROM, Judge.

Plaintiff Warren Terry sues for personal injuries allegedly inflicted by defendant, and plaintiff Virginia Terry sues for loss of consortium. Their petition is in four counts. Count I alleges intentional injury done to Warren and prays compensatory damages. Count II prays for punitive damages by reason of the alleged intentional tort. In Count III, Warren alleges alternatively that the injuries suffered by him resulted from negligence on the part of defendant Houk. Count IV prays damages for Virginia's loss of consortium.

Shortly after the filing of this suit by the Terrys, Houk filed a separate lawsuit seeking a declaratory judgment that The Western Indemnity Company, Inc. was obligated to defend the Terrys' suit and to pay any damages awarded therein. Western Indemnity defended on the ground that Warren's injury was the result of an intentional act by Houk and therefore was not within the coverage of the Houk policy. The declaratory judgment suit was tried to a jury and resulted in a verdict in favor of Western Indemnity. However, no verdict was returned nor was any judgment entered in that suit with respect to recovery on the Terry claims. Houk appealed to this court, but his appeal was dismissed on the ground that in the absence of any judgment either for or against the Terrys, the declaratory judgment was not final and therefore was not appealable.

While the appeal just mentioned was pending, this case went to trial before a jury, and the following evidence was given. The Terrys have been owners of a tract of real property in Clinton, Missouri. In 1975, Houk moved upon an adjoining tract. A continual dispute over property boundaries ensued and was never resolved. Houk repeatedly warned his neighbors to stay off his property. He often cursed his neighbors when they neared the boundary lines. The Terrys reacted to Houk's antics by ignoring him. Houk suffers from heart disease and has a wooden leg, but these infirmities did not prevent his activity around his home and yard. He built a garage, drives an automobile, and is able to walk with the use of a cane or crutches.

On August 30, 1978, Houk was working in his yard removing grass from his sidewalk area by use of a long-handled-pointed shovel. At this time, plaintiff Warren was mowing his lawn by use of a riding lawnmower. As he neared the edge of this property, Houk warned Warren to stay on his own property. As Warren neared a corner of his property and while still astride the mower, Houk grabbed him by the back of the neck. Warren reacted by pushing Houk back away from the mower. At this point, the long-handled-pointed shovel held by Houk struck Warren in the face. The

blow produced a facial laceration which required 57 stitches to close. Warren testified that he later developed blurred vision, headaches, sinus problems and pain during periods of cold weather. Warren and his wife operated a local store. He testified, over objection, that he lost business profits as a result of not being able to work following the above incident.

Immediately after this episode, Virginia confronted Houk and asked him if he had struck her husband. Houk, according to her testimony, told her, "You damn right I did. That will teach him to stay on his own property." Virginia also testified that since the assault, and as a result thereof, her marriage had suffered and was depressed: "You are just ... if you are not happy together, if he is not happy with you, then you are not as happy as you could be and as you were once."

Houk did not appear at the trial. His testimony was submitted by affidavit, read into evidence, and described the incident as an accident. Houk claimed he was knocked off balance, presumably by the mower, and the shovel flew up resulting in the blow to the respondent's face.

Upon submission to the jury, the jury found $1,100 actual and $6,000 punitive damages in favor of Warren and $2,000 actual damage to Virginia. Houk has appealed, but the Terrys have filed no respondents' brief. That lack of appearance by them on appeal has added greatly to the labor of this court, and is a practice to be discouraged.

Houk's points on appeal may be summarized as follows: (1) the trial court erred in not declaring a mistrial because of an attempt by Terrys' counsel to inquire as to any relationship of the veniremen to Western Casualty; (2) the court erred in admitting evidence as to Warren's loss of business profits; (3) the court erred in overruling objection to evidence respecting Houk's "demeanor"; (4) the court erred in referring to the package of instructions affecting Warren as being Instructions 8 through 11, instead of 7 through 11; (5) the court erred in submitting a series of instructions

numbered 1 through 15, although there was no number 6 instruction in the sequence of numbers.

## I.

■ During the course of the voir dire, Terrys' counsel inquired of the panel whether any of them or any members of their immediate family were officers, stockholders or employees of Western Casualty. Houk's counsel immediately objected, and the objection was sustained, on the ground that it had been found by a jury in the declaratory judgment suit that Western Casualty had no obligation to defend or to pay any judgment against Houk, and that therefore Western Casualty had no relationship to this case justifying the inquiry. Following that ruling, Houk's attorney requested a mistrial, which was denied. Houk now assigns the latter ruling as error.

It is not entirely clear that the inquiry in question was improper. The judgment in the declaratory judgment suit was purely interlocutory at the time of the trial of the present case, and therefore there was no final judgment that Western Casualty might not have an interest in the result here. In any event, regardless of that, the trial court committed no reversible error with respect to this matter. The court acted favorably to Houk on his objection and told the jury to disregard the question. Whether or not the court should have gone still further and granted a mistrial rested within the court's sound discretion. The decision in that regard will not be disturbed on appeal in the absence of a clear abuse of discretion. *Yust v. Link*, 569 S.W.2d 236 (Mo.App.1978). We find no abuse of discretion here.

## II.

With regard to Warren's claim for loss of profits, the evidence was that he and Virginia operated a local store. Warren estimated that he lost $300 to $400 in profits due to the fact that neighbors who operated the store while he was recovering did not know how much merchandise to order in preparation for the Labor Day holiday

weekend. The record does not disclose how he calculated his lost profits. No comparative figures as to sales, purchases or any other pertinent element from previous weekends or holidays were ever offered. There was no evidence that the claimed lost profits of $300 to $400 were related to Warren's being incapacitated or to other possible causative factors. What the evidence shows is a bare assertion by Warren of this claimed loss. There was no evidence either descriptive or supportive of the value of his services.

The matter of loss of business profits has been ruled frequently by our courts. The general rule is that a plaintiff in an action for damages for personal injury may not recover the loss of business profits because "... such profits are wholly speculative, or because such profits arise, in whole or in part, from elements other than his personal efforts and earnings." *Seymour v. House*, 305 S.W.2d 1, 4 (Mo.1957). *Seymour*, after announcing this general rule, noted an exception that provides for such recovery where, upon proper proof thereof, it is established that plaintiff's *personal service* predominates and other business elements such as capital and labor are not so material. *Seymour* concludes that: "Probably, the true rule is that evidence of loss of profits is admissible where it would have a material bearing on the actual value of plaintiff's own services and work in the business and the pecuniary value of his lost time, but not as proof of a distinct element of damage in and of itself."

The record does not disclose directly that respondent, with the help of his wife, operated his store as a one-man business with only a minor capital factor. Although such an inference might be drawn, such inference would not be sufficient under the ruling in *Bischoff v. Dodson*, 405 S.W.2d 514, 519 (Mo.App.1966): "the Seymour opinion seems to require more than an inference; it speaks of a substantial showing." (i.e., that success of a business was predominantly dependent upon the plaintiff's personal effort, service, and initiative). *Bischoff* further points out that a plaintiff must offer

evidence which is, "certain enough to afford a basis for a reasonable estimate of the amount of the loss."

Warren's evidence and proof of the claimed loss of business profits fails for two reasons. First, the evidence which was admitted was wholly insufficient as to the amount of loss. Second, he failed to meet the requirement of a substantial showing that the success of his business was predominantly dependent upon his personal service, initiative and effort, and that capital investment and labor were relatively insignificant. *Seymour, supra; Bischoff, supra.*

Although the item of damages based on loss of profits must be disallowed, that does not invalidate the balance of the compensatory damages awarded to Warren. There was evidence that Warren sustained medical expense and pain and suffering. If $400 be subtracted from the $1,100 actual damages awarded, the reduced award of $700 is more than amply supported by the evidence. The error in admitting evidence as to loss of profits can be cured by conditioning an affirmance on a remittitur by Warren of $400, an action which is within the authority of this court. *Worley v. Tucker Nevils, Inc.*, 503 S.W.2d 417 (Mo. banc 1974); *C.H. Albers Commission Co. v. Spencer*, 236 Mo. 608, 139 S.W. 321 (1911); 5 Am.Jur.2d Appeal & Error Section 940 (1962).

The award of $6,000 punitive damages is not affected by the remittitur mentioned. Some actual damage award is required as a precondition to a punitive damage award, but no set amount of actual damages is necessary—even a nominal award of $1 suffices. So we have recently held that an excessive award of actual damages in the amount of $5,000 may be reduced to $1, while at the same time affirming a punitive damage award of $100,000. *Snodgrass v. Headco Industries, Inc.*, 640 S.W.2d 147 (Mo.App.1982).

Nor is the award of damages to Virginia affected by the above remittitur. Although Virginia's claim is derivative from

the injury inflicted upon her husband, nevertheless her cause of action is an independent one and the damages to each spouse must be established separately. *Bly v. Skaggs Drug Centers, Inc.,* 562 S.W.2d 723 (Mo.App.1978).

In the argument portion of his brief under this point, Houk intimates that the damage award to Virginia and the punitive damage award to Warren were so excessive as to indicate bias and prejudice of the jury. Any such independent claim as a basis for setting aside the verdict is not properly before this court because such a contention has not been properly presented in a separate Point Relied On. The only point we have for consideration is the assignment that the trial court committed error by improper admission of evidence. Regardless of that technical point, however, the awards in question do not approach being so excessive as to indicate any bias and prejudice.

### III.

During the course of trial, Warren was questioned by his counsel concerning the demeanor and attitude of Houk toward the Terrys. Houk's counsel objected on the ground that the Terrys were attempting to attack Houk's reputation. That objection was overruled. A similar question was put to another neighbor concerning her relationship with Houk, particularly as regarded the property boundary. Houk objected again on the ground that this went to reputation, and the objection was overruled.

The rulings in question were correct. This testimony was not directed toward Houk's general reputation in the community, but rather toward the specific matter of his demeanor and attitude toward his neighbors regarding the boundary dispute. The testimony was not validly subject to the objection made.

### IV.

Instruction No. 7 told the jury that Instructions 8 through 11 and general Instructions 1 through 5 applied to the claim of plaintiff Warren Terry. Under the Notes On Use under MAI 2.05, the reference should have been to Instruction 7 through 11 rather than 8 through 11.

While the "Notes On Use" are authoritative, and although any deviation is error and presumed to be prejudicial, the court must inquire in each case whether the deviation is in fact prejudicial. *Salsberry v. Archibald Plumbing & Heating Co., Inc.,* 587 S.W.2d 907 (Mo.App.1979). If in deciding whether the violation of MAI applicable instructions was so prejudicial as to compel reversal, the "judicial mind and conscience conclude that the record makes perfectly clear that no prejudice could have resulted from the omission, the error may be disregarded." *Sullens v. Roberts,* 624 S.W.2d 510, 512 (Mo.App.1981).

It is highly unlikely that the jury was confused by the improper reference to Instructions 8 through 11 instead of 7 through 11. This minor error was innocuous and not prejudicial.

### V.

Fourteen instructions were given to the jury, with the last one being numbered No. 15. There was no Instruction No. 6. Houk contends this violates Comment D under MAI 2.00 which states that: "All other instructions will be numbered sequentially . . . ."

What was said under Point IV above applies also here. It is highly unlikely that the jury could have been confused by this minor mistake in numbering. We find the error to be nonprejudicial.

If, within 15 days after the filing of this opinion, Warren Terry will enter here a remittitur of $400, the judgment will stand affirmed in the sum of $700 actual damages to Warren Terry, $6,000 punitive damages to Warren Terry, and $2,000 actual damages to Virginia Terry, as of the date of the original judgment. Otherwise, the judgment will be affirmed as to the $6,000 award of punitive damages and the $2,000 award to Virginia Terry, but the judgment will be reversed as to the $1,100 award of actual damages to Warren Terry and the

cause will be remanded for a new trial on the latter issue only.

All concur.