**Natalie CORBETT, Plaintiff and Appellee,**

v.

**John SEAMONS dba Big O Tire, and Treco, Inc., Defendants and Appellants.**

**No. 950094–CA.**

Court of Appeals of Utah.

Sept. 28, 1995.

Robert C. Keller (argued), Snow, Christensen & Martineau, Salt Lake City, for Appellants.

Reed W. Hadfield (argued), Stephen R. Hadfield, Mann, Hadfield & Thorne, Brigham City, for Appellee.

Before Judges BILLINGS, GARFF [1], and GREENWOOD.

## OPINION

GREENWOOD, Judge:

Natalie Corbett sued John Seamons, dba Big O Tire, and Treco, Inc., for injuries she suffered in an automobile accident in January 1991. A jury awarded her a total of $107,-623.10, which included general damages, medical expenses and lost earning capacity. Seamons appeals the award of damages for lost earning capacity and the award of prejudgment interest. We affirm.

## BACKGROUND

Corbett was injured while driving south on I–15 near Beck Street in Salt Lake City, when the rear wheel disengaged from her car. She did not collide with any cars or other objects, but suffered a muscle-strain injury when she was forced to pull hard to the right on the car's steering wheel. As a result, she required medical treatment and incurred $9,800 in medical expenses.

Corbett and her husband are co-owners of a family yard-care business called the Mowin' Rangers (the Business). The Business offers mowing, fertilization, weeding, aeration and flower planting to businesses and private residences in Logan, Brigham City, Tremonton and Ogden. The Business employs between two and thirteen full- and part-time employees.

Since the Business began in 1981, Corbett never received a salary for her work. Instead, all profits were put back into the Business.

At trial, Dr. Dewey MacKay, a board-certified orthopedic surgeon, testified that Corbett suffered a "cervical strain and a thoracic spine strain" and, as a result, has a permanent, eight percent partial physical impairment. Corbett testified that although she is still able to perform some management and secretarial tasks for the Business, the injury prevents her from training new employees, mowing, edging, driving large machinery, dumping grass, typing and filing—all tasks she testified she could—and did—perform before the accident. Corbett and her husband hired workers to perform those tasks she could no longer do herself. She testified that replacement labor totalled 74 hours a month at $5 or $6 an hour for outside work (which had cost the Corbetts $16,058 as of the time of trial) and 41 hours a month at $5.50 an hour for inside work (totalling $9,075).

W. Cris Lewis, a professor of economics at Utah State University, testified for Corbett concerning the cost of replacing the production labor and secretarial work she had previously performed, calculating the expense over Corbett's life expectancy. Seamons objected to Lewis's testimony, claiming replacement-labor costs constitute damages to the Business, not to Corbett. Thus, Seamons claimed, the evidence lacked proper foundation and was confusing. The trial court declined to exclude Lewis's testimony entirely; instead, it required that Lewis tie the labor replacement costs to Corbett's personal losses.

Lewis calculated the loss of future earning capacity as follows:

| | |
|---|---|
| Production/outside labor costs: | $103,471 |
| Secretarial/inside labor: | $53,298 |
| Lost household service capacity: | $9,868 |

At the close of Corbett's case, Seamons moved for a directed verdict on the lost earnings capacity claim, arguing Corbett had failed to establish a prima facie case of lost earning capacity. The trial court denied the motion.

---

1. Senior Judge Regnal W. Garff, acting pursuant to appointment under Rule 3–108(4), Utah Code of Judicial Administration.

Both Corbett and Seamons submitted a proposed jury instruction on the issue of lost earning capacity. Despite Seamons's objection to Corbett's instruction, the trial court gave both instructions.

The jury returned a special verdict awarding Corbett $3,289 for the loss of household services; $9,867.10 for past medical expenses; $16,756 for past lost earning capacity; $52,711 for future loss of earning capacity; and $25,000 in general damages.

Corbett submitted a proposed judgment awarding prejudgment interest on the past lost earning capacity award. Seamons objected, claiming such an award was contrary to Utah law. The trial court awarded prejudgment interest.

Seamons subsequently moved for a judgment notwithstanding the verdict and for a new trial. The trial court denied the motions.

### ISSUES ON APPEAL

Seamons raises the following issues on appeal:

(1) Did the trial court err in admitting evidence of the cost of replacing Corbett's labor for the Business?

(2) Did the trial court err in instructing the jury that Corbett could recover costs of replacing her labor in the Business and in denying a motion for a new trial based on the claimed error in the instruction?

(3) Did the trial court err in allowing prejudgment interest on the jury award for past earning capacity?

### STANDARD OF REVIEW

■ A trial court's selection, interpretation and application of a particular rule of

evidence is reviewed for correctness. *Utah Dep't of Transp. v. 6200 South Assocs.*, 872 P.2d 462, 465 (Utah App.), *cert. denied,* 890 P.2d 1034 (Utah 1994). The determination of whether a plaintiff has established a prima facie case is also reviewed for correctness. *Sorenson v. Kennecott–Utah Copper Corp.*, 873 P.2d 1141, 1144 (Utah App.1994). A trial court's refusal to give a jury instruction presents a question of law, which we review for correctness. *Ong Int'l (USA), Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 452 (Utah 1993). The interpretation of a statute is also a question of law, reviewed for correctness. *State v. Larsen*, 865 P.2d 1355, 1357 (Utah 1993). Finally, a trial court's decision to deny a new trial is reviewed for an abuse of discretion; however, if the trial court premises its ruling on a legal determination, we review it for correctness. *Crookston v. Fire Ins. Exch.*, 860 P.2d 937, 938 (Utah 1993).

### ANALYSIS

#### I. Measure of Damages

Seamons argues that the trial court erred in admitting evidence of the cost of hiring workers to perform tasks Corbett was able to do herself before the accident. We disagree.

■ A plaintiff has a general right to recover for lost earning capacity.[2] *Rosenthal v. Harker*, 56 Utah 113, 189 P. 666, 667–68 (1920) (affirming award of damages to an injured junk dealer based on lost "earning power"). However, in order to recover for lost earning capacity, the loss must be proven with "reasonable certainty," although not "mathematical certainty." *Detraz v. Hartford Accident & Indem. Co.*, 647 So.2d 576, 579 (La.App.1994) (citation omitted); *accord Kessler v. Southmark Corp.*, 643 So.2d 345, 350 (La.App. 2 Cir.1994); *see Clawson v.*

---

**2.** Lost earning capacity was discussed in *Delphen v. Department of Transp. & Dev.*, 657 So.2d 328, 336 (La.App.1995), as follows:

Loss of earning capacity is not the same as lost wages. Rather, earning capacity refers to a person's potential. Earning capacity is not necessarily determined by actual loss. While the plaintiff's earnings at the time of the accident may be relevant, such figures are not necessarily indicative of her past or future lost earning capacity.

*Id.* at 336; *see also DeWall v. Prentice,* 224 N.W.2d 428, 435 (Iowa 1974) (lost earning capacity "is determinable by the difference between the value of an individual's services, if working, as he would have been but for the injury, and the value of the services of an injured person if working, in the future") (quoting 22 Am.Jur.2d, Damages, § 92).

*Walgreen Drug Co.,* 108 Utah 577, 162 P.2d 759, 765 (Utah 1945) (award of lost earning capacity sustained, even though evidence was merely that the plaintiff "made 'pretty good' while trapping and farming" and could not trap and farm after accident).

■ When the injured party works in his or her own business and does not receive a set salary or wage, earning capacity may be calculated by reference to the cost of hiring a replacement to perform the tasks the injured party was formerly able to do. In *Wilcox v. Sway,* 69 Cal.App.2d 560, 160 P.2d 154 (1945), the California Court of Appeals affirmed the award of lost earning capacity to a rest home manager who was forced to hire a housekeeper to perform tasks she was formerly able to do herself. *Id.* at 160. Similarly, in *Robb v. Niles–Bement–Pond Co.,* 269 Pa. 298, 112 A. 459, 460 (1921), the Pennsylvania Supreme Court affirmed the award of lost earning power to the owner of an ice business who was forced to employ a helper throughout the year, since he required help only half the year prior to his injury. *See also* E. LeFevre, Annotation, *Cost of Hiring Substitute or Assistant During Incapacity of Injured Party as Item of Damages in Action for Personal Injury,* 37 A.L.R.2d 364, 373–77 (1954) (collecting cases).

■ Nonetheless, Seamons maintains that the damage award in this case was improper because it was based on a calculation of lost business profits rather than on a calculation of losses to Corbett personally. It is true that "as a general rule a person cannot recover lost business profits" as a measure of lost earning capacity. *Young v. Stewart,* 101 N.C.App. 312, 399 S.E.2d 344, 346 *rev. denied,* 328 N.C. 735, 404 S.E.2d 879 (1991). This rule reflects the valid concern that:

> evidence of the profits of a business in which the injured party in a personal damage suit is interested, which depend for the most part upon the employment of capital, the labor of others, and similar variable factors, is inadmissible in such suit and cannot be considered for the purpose of establishing the pecuniary value of lost time or diminution of earning capacity, for the reason that a loss of such profits is not the necessary consequence of the injury

and such profits are uncertain and speculative. In such circumstances loss of profits cannot be considered either as an element or the measure of damages.

*Id.* 399 S.E.2d at 346–47 (citation omitted in original).

Seamons refers us to *Seymour v. House,* 305 S.W.2d 1 (Mo.1957), in which the Missouri Supreme Court considered a personal injury suit by a building contractor who was awarded as damages the cost of paying a worker to do a task plaintiff claimed he could no longer perform as a result of his injury. The court rejected the award, stating:

> It seems entirely obvious to us that a mere showing that [the substitute worker] was paid $9,035.60 after plaintiff's injury did not and could not, *in and of itself,* prove that plaintiff had lost that amount, as earnings or otherwise.

*Id.* at 4 (emphasis added); *accord Wesson v. F.M. Heritage Co.,* 174 Conn. 236, 386 A.2d 217, 220–21 (1978); *Ponder v. Budweiser of Asheville, Inc.,* 30 N.C.App. 200, 226 S.E.2d 539, 541 *rev. denied,* 291 N.C. 176, 229 S.E.2d 690 (1976).

The *Seymour* court goes on to endorse the use of lost profits as a measure of lost earning capacity "[i]f plaintiff can make a substantial showing that the capital invested in this business was relatively insignificant, and that the success of the business was predominately dependent upon his personal efforts, initiative and services." *Seymour,* 305 S.W.2d at 5. In other words, "evidence of the payment of $9,035.60 to [the substitute worker], *standing alone and unsupported,* afforded nothing more than an opportunity for speculation." *Id.* (emphasis added). Such evidence would only be relevant to establish the monetary value of the victim's services. *Id.*

Thus, the *Seymour* court held that evidence of lost profits alone generally cannot establish lost earnings or lost earning capacity. *Id.* This rule, or some variation of it, has been widely adopted. For example, the Oregon Court of Appeals held that "when the profits from the business result primarily from the personal endeavors, skill, and attention of the owner, rather than from invest-

ment of capital or from labor of other persons, those profits are a proper factor to consider in the determination of the business owner's impaired earning capacity." *Doran v. Culver*, 88 Or.App. 452, 745 P.2d 817, 820 (1987), *rev. denied*, 305 Or. 102, 750 P.2d 496 (1988) (citing Restatement (Second) of Torts, § 924, cmt. c). In *Young*, the North Carolina Supreme Court held that "where the business is small and the income which it produces is principally due to the personal services and attention of the owner, the earnings of the business may afford a reasonable criterion to the owner's earning power." *Young*, 399 S.E.2d at 347.[3]

Based on the foregoing, we believe that the "lost profits" line of cases does not bar the damage award for lost earning capacity to Corbett. First, it does not appear that Corbett attempted to introduce evidence to establish profits lost by the Business as a result of her injury. However, even if the evidence of replacement costs could be construed as evidence of lost profits,[4] Corbett produced other evidence independent of her replacement costs to support her claim for lost earning capacity. For instance, during trial, Dr. Dewey MacKay, an orthopedic surgeon who examined Corbett, detailed her injuries and testified that she had an eight percent permanent partial impairment rating. Corbett then enumerated the tasks she can no longer perform as a result of the injury: "running" and training the mowing crews; operating the riding mowers; driving the two-ton-truck; edging lawns; operating a spin trimmer; dumping bags of grass; filing papers; and hitching up trailers. She estimated that, as a result of the injury, she lost

about 888 hours a year on yard-care tasks and 495 hours a year on secretarial services. She also estimated the appropriate rate of pay for yard care services at $5 an hour in 1991 and $6 thereafter, and the reasonable rate for secretarial work at $5.50 an hour. Based on those figures, W. Cris Lewis, the economist, used a standard formula for determining the loss due to impairment of earning capacity and estimated Corbett's loss for her future yard-care work at $107,471 and for her future secretarial work at $53,298.

Thus, we conclude that the award for lost earning capacity, although not proven with "mathematical certainty," is not simply a product of speculation. Corbett's losses were calculated based on reasonable estimates of her time and the hourly worth of her services, as well as amounts actually paid to persons hired by the Business to perform tasks previously performed by Corbett. The projections of her future losses were based on credible expert testimony. For the foregoing reasons, we hold that the trial court did not err, either in admitting evidence of Corbett's lost earning capacity or in rejecting post-trial motions for a directed verdict, a judgment notwithstanding the verdict and for a new trial.

## II. Jury Instructions

Both Seamons and Corbett submitted jury instructions on the correct measure of damages. Seamons's proposed jury instruction reads as follows:

A physical injury to the owner of a business that is harmed by the owner's absence is only indirectly an injury to the

---

3. *See Delott v. Roraback*, 179 Conn. 406, 426 A.2d 791, 794 (1979) (lost profits from business afford "some basis" for measuring lost earning capacity of owner, although award must be reasonable and not speculative); *Condron v. Harl*, 46 Haw. 66, 374 P.2d 613, 618 (1962) (showing of inability to perform tasks that victim could perform before accident is insufficient to support lost earning capacity award without proof of consequent diminishment of earnings); *Kagan v. St. Louis Pub. Serv. Co.*, 334 S.W.2d 379, 382 (Mo.App.1960) (evidence of lost earning capacity must include proof of amount plaintiff earned before accident and how much he might earn in future); *Featherly v. Continental Ins. Co.*, 73 Wis.2d 273, 243 N.W.2d 806, 811–12 (1976) (evi-

dence of lost profits alone insufficient to establish lost earning capacity); *see also* H.D. Warren, Annotation, *Loss of Profits of a Business in Which Plaintiff is Interested as a Factor in Determining Damages in Action for Personal Injuries*, 12 A.L.R.2d 288 (1950) (collecting cases).

4. Seamons argues that Corbett used lost profits as a measure of her lost earning capacity because paying additional wages to replacement employees would necessarily cut into the Business's profits. Although it is certainly true that hiring employees costs money and, for that reason, reduces profits, it is equally true that hiring employees is a cost of doing business.

business. The owner is entitled to damages only for the reasonable value of working time lost to date, if any, and harm to his or her future earning capacity, if any.

In this case, you have heard evidence as to the cost of hiring other workers in plaintiff's business to replace plaintiff for certain tasks. These costs are not recoverable by plaintiff as an item or element of damages, but may be considered by you, together with the other factors I have instructed you about, as some evidence of the value of plaintiff's time.

In response, Corbett proposed the following instruction:

When the injured person was not receiving a salary, but owned and was operating a business that was deprived of his services by the injury, his damages are the value of his services in the business during the period.

The trial judge opted to give both instructions as Instructions 28 and 29. Seamons objected to the inclusion of Instruction 29 (Corbett's instruction), and claims on appeal that it was an inaccurate statement of the law and expressly contrary to Instruction 28, thus creating "a high probability of jury confusion."

■ However, we find no error in giving both jury instructions. Instruction 29, which is taken from section 924, comment c., of the Restatement (Second) of Torts, is a correct statement of the measure of damages for Corbett's past losses as the value of her services in the Business. Instruction 28, which is based on section 912, comment d., of the Restatement (Second) of Torts, correctly states that Corbett may recover for lost earning capacity, which the jurors also awarded. The instructions are also consistent with Utah law. *See, e.g., Clawson v. Walgreen Drug Co.*, 108 Utah 577, 162 P.2d 759, 765 (1945) (impairment of earning capacity properly determined through evidence of value of plaintiff's services in his business); *Rosenthal v. Harker*, 56 Utah 113, 189 P. 666, 667–68 (1920) (same). Thus, taken as a whole, the instructions provided a correct

statement of the law and did not create a high probability of confusing the jury. Accordingly, we find no error in the instructions.[5]

### III.  Prejudgment Interest

Seamons argues it was inappropriate for the trial court to award prejudgment interest on the award of $16,756 for past lost earning capacity. Under section 78–27–44(1) of the Utah Code, a plaintiff may "claim interest on the special damages actually incurred from the date of the occurrence of the act giving rise to the cause of action." Utah Code Ann. § 78–27–44(1) (1992). However, "'special damages actually incurred' does not include damages for future medical expenses, loss of future wages, or loss of future earning capacity." Utah Code Ann. § 78–27–44(3) (1992).

As this court explained, special damages are

those expenses that [plaintiffs] have paid out of pocket, for which they have used their own money and which they will not get until the settlement of their action. Getting interest on their out-of-pocket expenses will provide a total recoupment of any expenses that they have had from the time of the accident until they are paid in full by a recovery at court or by settlement.

*Gleave v. Denver & Rio Grande West. R.R.*, 749 P.2d 660, 672–73 (Utah App.), *cert. denied*, 765 P.2d 1278 (Utah 1988) (quoting Utah House of Reps.Tr. of 2nd and 3rd Reading of S.B. 153, March 13, 1975, Representative Fisher speaking).

■ Pursuant to the statute, the award of prejudgment interest to Corbett for past lost earning capacity is entirely appropriate. Corbett properly documented her earning capacity between the time of the accident and the time of trial by presenting evidence of the tasks she could not perform and the economic value of performing those tasks. Thus, the award of past lost earning capacity constitutes "those expenses that [plaintiffs] have paid out of pocket, for which they have

---

5. Moreover, as Corbett points out, the jurors awarded significantly less than she requested, which implies that the jury appropriately considered the evidence of replacement costs as only an indication of earning capacity rather than as a direct item of damages.

used their own money and which they will not get until the settlement of their action." *Id.* The award of prejudgment interest on that amount was not error.

## CONCLUSION

Seamons's challenges to the use of replacement costs as the measure of damages suffered by Corbett are unfounded. Calculating lost earning capacity based on the replacement costs of plaintiff's work in a business is an established principle in Utah and elsewhere. Additionally, Corbett carefully documented the expenses incurred by her business in replacing labor she was able to perform before the injury. We find no error either in the admission of the evidence of lost earning capacity or in the instructions given to the jury. Moreover, we conclude that the award of prejudgment interest on past lost earning capacity was appropriate.

Accordingly, we affirm.

BILLINGS and GARFF, JJ., concur.